Mr. Justice. CATRON
 

 delivered the opinion of the court.
 

 . As this case comes hereon a writ of error to bring up the proceed-, ings.of a state court, before proceeding to examine&he merits of the controversy, it is our duty to determine whether this court has jurisdio tion of the matter.
 

 The ordinances complained of, must violate the Constitution or laws of the United States, or some authority exeíciséd under them; if they .do not, wé have no power by the 25th section of the Judiciary Act to interfere. The Constitution makes no provision, for pro-' tecting the citizens of therespective states in their religious liberties ; this is left to the state constitutions and laws: nor is there any inhibition imposed by the Constitution of the United States in this respect on the states. We must therefore look beyond the Constitution for the laws that are supposed to be violated,- and on which our jurisdiction can be,founded; these1 are the following acts of Congress. That of February 20, 1811, authorized the people of the territory of Orleans to form a constitution and state government; by sect. 3, certain restrictions were imposed in the form of instructions to the convention that might frame the constitution; such as that it should be republican; consistent with the Constitution of the United States-; that it should contain the fundamental principles of civil and religious liberty; that it should secure, the right of, trial by jury in criminal' cases, and the writ of
 
 .habeas corpus;
 
 that the laws of. the State should be published, and legislative and judicial proceedings be written.-and recorded in the language of the Constitution of the •United States.- Then follows by-a second proviso, a stipulation reserving to the United. States the property in the public lands, and their exemption from state taxation — with a declaration that the navigation of the Mississippi and its waters shall be common highways, &c.
 

 By the act of April 8, 1812, Louisiana was admitted according to the mode pn. ¡cribed by the áct of 1811; Congress declared it should be on the conditions and terms contained in, the 3d section of that act; which should be considered, deemed and taken, as fundamental conditions and terms upon which the state was incorporated in the union.
 

 All Congress intended, was to declare in advance, to the people of the territory, the fundamental principles their constitution should contain; this was every way proper under the circumstances: the instrument having been duly formed, and presented, it was for the national legislature to judge whether it contained the.proper principles, and to accept*it if it did; or reject it if it did .not. Having accepted the constitution and admitted the state, “on an equal footing with the origneal states in all respects whatever,” in express terms, by the act of 1812, Congress was concluded from assuming
 
 *610
 
 that the instructions contained in the act 'of 1811 had not been complied with. No'fundamental principles could be added by way of amendment, as this would have been making' part of the state- constitution ;• if Congress could make it in part, it might, in the form of amendment, make it entire. The conditions and terms referred to in the act,of 1812, could only relate to the stipulations contained jn the second proviso of the act of 1811, involving rights of property and navigátion; and in our Opinion were not otherwise intended.
 

 The principal stress of the argument for the plaintiff in error proceeded on tiie ordinance of 1787. The. act of 1805, chap. 83,. having.provided, that from and after the establishment of the government of. the Orleans territory, the inhabitants of the same should be entitled to enjoy all the rights, privileges, and advantages secured by said ordinance; and then enjoyed by the people of the Mississippi territory. It was also made the frame of government, with modifications.
 

 In the ordinance, there are terms of compact declared to be thereby established, between the original states, and the people-in the states afterwards to be formed north-west of the Ohio,'unalterable, unless by common consent — one of which stipulations is, that “no person- demeaning himself in a peaceable manner, shall ever be molested on account of his mode of worship, or religious sentiments, in the said territory.” For this provision is claimed the sanction of an unalterable law of Congress; and it is insisted the city ordinances above have violated it; and what the force of the ordinance is north of the Ohio, we do not pretend to say,' as it is unnecessary for the.purposes of this case. But as regards the state of Louisiana, it had no further force, after the adoption of the state constitution,, than other acts of Congress organizing, in part, the . territorial government of Orleans, and standing in connection with the ordinance of. 1787. So far as they conferred political rights, and secured civil and religious liberties, (which are political rights,)-the laws of Congress were all superseded by the state constitution; nor is any part of them in force, unless they were adopted by the constitution.of-' Louisiana, as laws of the state.’ It is not possible to maintain that the-United States hold' in trust, by. force of the ordinance, for the ■people of Louisiana, all the great elemental principles, or any one of them, contained in the ordinance, and secured to the people of the Orleans territory, during its existence. It follows, no repugnance could arise between 'the ordinance of 1787 and. an act'of the legislature of Louisiana, or- a city regulation founded on such act; ‘ and therefore this court has no jurisdiction on the last ground assumed, more than bn the preceding'ones. In our judgment, the question presented by the record is exclusively of state, cognisance, and equally so in the old states and the new ones; and. that the Writ'of error must be dismissed.