[Crim. No. 2310.   First Dist., Div. One.   Mar. 30, 1945.]

THE PEOPLE, Respondent, v. WESLEY VOICE, Appellant.

Ernest Spagnoli for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

KNIGHT, J.—The defendant, Wesley Voice, was found guilty by the court sitting without a jury of the crime of contributing to the delinquency of a girl fourteen years of age. (Welf. & Inst. Code, § 702.) Motion for probation was denied and defendant was sentenced to five months' imprisonment in

the county jail. This appeal was taken from the judgment of conviction.

■ The first point urged is that a trial by jury was not waived in accordance with section 7 of article I of the state Constitution. Defendant does not specify, nor cite any cases from which it may be inferred, wherein he claims there was a failure to comply with the constitutional provision. For that reason the point might well be disregarded. However, we have examined the record and it discloses that defendant's contention is wholly without merit. The pertinent portion of section 7 provides: "A trial by jury may be waived . . . by the consent of both parties, expressed in open court by the defendant and his counsel . . ."; and in dealing with the requirements thereof it is held that "No stereotyped language expressing such waiver need be used by the parties, it being necessary only that the words used in their ordinary meaning show an intention to submit the case to a court without a jury." (*People* v. *Bastio*, 55 Cal.App.2d 615 [131 P.2d 614].) Here the record shows that at the time of the arraignment defendant and his counsel asked for a jury trial, but that afterwards they changed their minds; and that at the opening of the trial, some twenty days later, each definitely stated that he waived a trial by jury; whereupon the prosecution consented that the cause be tried without a jury. In so stating that a jury trial was waived defendant's attorney used the plural "we"; whereupon the court asked the defendant twice the direct question whether he waived a jury trial, and both times he answered "yes." The court then said to him, "You understand that I act as judge and jury," to which he replied, "yes." At that time defendant was thirty-nine years of age; he is a college graduate, and was formerly for about ten years a clergyman. It cannot be said, therefore, that he did not understand the meaning of a waiver of a jury trial.

■ Defendant's second contention is that the evidence is insufficient to sustain the conviction. This contention likewise is without merit. The testimony on material points is conflicting; and resolving all such conflicts in favor of the trial court's decision the essential facts may be stated as follows: The girl's home was in San Francisco. Her mother was dead, and she lived alone with her father, who was away from home at work during the daytime. At the time of the commission

of the offense defendant was employed as a timekeeper in the Army Transport Service; and he picked up an acquaintance with the girl on a Saturday afternoon while she was attending a moving picture theatre, unaccompanied by any other person. The defendant occupied the seat next to her, and he offered her some candy and cigarettes, which she refused; but before leaving the theatre he obtained her home address and said he would call on her the following Saturday afternoon. She told him that if he did she would not let him in; so he made an appointment to have her meet him at another theatre. She kept the appointment, and at the end of the show he accompanied her part way home on the streetcar. On the following Tuesday afternoon, about 1:30 o'clock, he called at her home while she was alone. He insisted on entering, and they went into the front room and sat on the sofa. He asked her how old she was, and she told him she was fourteen. Soon after they were seated he began making improper advances. Among other things he opened the zipper on her jeans, placed his hand on her leg, and tried to induce her to have an act of sexual intercourse with him. She resisted by attempting to arise from the sofa and get away from him, but he forcibly restrained her from doing so. While making these improper advances he engaged in lewd and lascivious conversation and conduct, all of which is shown by the girl's testimony and need not be repeated here. They had been seated on the sofa for about half an hour when a policeman officiating as school truant officer called at the house to inquire why the girl had been absent from school for approximately a month. He rang the front door bell and receiving no response tried the door; but it was fastened with a "nightchain." He then called the girl by name, and she came to the door and let him enter. After inquiring why she was not in school he asked her who was in the house with her, and she replied, "There is a man." The officer asked where the man was, and she pointed toward the bedroom. The officer searched the bedroom but found no one. He then called out that he was a police officer and that if anyone was hiding for them "to come out." Receiving no response he started to communicate with the police station, and while doing so he observed a door in the hall open and close; whereupon he went down the hall, pounded on the door, and called out that "if anybody was in there for them to come out." The door was

opened and out stepped the defendant; whereupon he was taken to the police station. The room in which he had secreted himself was small and contained a wash basin and a bath tub.

It is evident that the facts above narrated and those concerning the defendant's lascivious and lewd conversation and conduct about which the girl testified are amply sufficient to support the trial court's decision that the defendant was guilty of the offense of contributing to the delinquency of a minor. Defendant points out that when he was interrogated at the police station immediately following his arrest he denied the accusation made against him by the girl; also that he denied the incriminating testimony given against him by her at the trial. But such denials and the testimony given by him in support thereof merely raised a conflict in the evidence; and since the trial court accepted and acted upon the girl's testimony, its decision on the issue of defendant's guilt is binding on appeal. (*People* v. *Stangler*, 18 Cal.2d 688 [117 P.2d 321]; *People* v. *Paris*, 59 Cal.App.2d 699 [139 P.2d 671].) ■ Defendant's opening brief is devoted largely to an attempt to show certain falsehoods in the girl's testimony; but under fundamental rules the questions of credibility of witnesses and the weight to be given their testimony are for the determination of triers of the issues of fact. It is only where the challenged testimony is obviously so inherently improbable as to be unworthy of belief, that a reviewing court will interfere (*People* v. *Houston*, 24 Cal.App. 2d 167 [74 P.2d 515]); and no such case is here presented.

Defendant assigns as error certain adverse rulings made during the cross-examination of the girl; but we find nothing therein which would warrant a reversal. Nor do we believe the assignments are of sufficient importance to call for any extended discussion, or for the quotation of those portions of the record to which they relate. ■ It is doubtless the rule that in cases of this kind much liberality should be allowed a defendant in cross-examining the minor involved; but here the record shows that there was no undue restriction placed on the defendant. The first ruling complained of was proper for the reason that the question ruled out was manifestly argumentative; and it was upon that ground that the objection thereto was made and sustained. After the objection thereto was sustained defendant made no attempt to reframe the question. ■ The questions involved in the remaining

rulings carried the implication that the girl had made up part of the story she was then telling on the witness stand from some of the language used by the assistant district attorney in asking questions on direct examination, and from a conversation had with another assistant district attorney prior to the commencement of the trial. Although both questions were objectionable as to form, the court might well have permitted the witness to answer. However, it is apparent that the adverse rulings did not operate to defendant's prejudice for the reason that the girl was extensively interrogated on the subject matter of those questions in other portions of the cross-examination.

The defendant was tried and convicted in department 8 of the superior court, and judgment of sentence was pronounced by the judge thereof, who also was the judge of the juvenile court. Defendant concedes that he was properly tried and convicted in department 8 of the superior court, but he contends that the presiding judge thereof, in pronouncing judgment of sentence, acted as judge of the juvenile court. The records of department 8 of the superior court affirmatively show to the contrary. The minutes thereof are embodied in the clerk's transcript, and it appears therefrom that defendant was arraigned for judgment therein on February 14, 1944; that the motion for probation was denied; that thereupon judgment of sentence was pronounced and the defendant then remanded to the custody of the sheriff with directions to execute the judgment of sentence. The copy of the judgment, signed by the judge and filed by the clerk of that court with the papers in the case in accordance with the requirements of section 1207 of the Penal Code, shows also that all proceedings had in connection with the pronouncement of judgment of sentence took place in that court. And the written notice of appeal filed by counsel for appellant on February 18, 1944, four days after the pronouncement of the judgment, was entitled "In the Superior Court, in and for the City and Co. of San Francisco, Dept. 8."

Defendant's contention that sentence was imposed by the judge of department 8 of the superior court, sitting as judge of the juvenile court, arises out of the following situation: The copy of the judgment of conviction which section 1207 requires shall be filed "with the papers in the case," and the certified copy which section 1213 of the same code requires

shall be furnished to the officer whose duty it is to execute the judgment, were made out on printed forms with blank spaces left for typewriting, the latter being a carbon copy of the former. As originally prepared both copies bore the title "In the Superior Court of the State of California in and for the City and County of San Francisco Department No. ——," and then followed in typewriting the figure "8" and the word "Juvenile." But after being so prepared the copy filed with the papers in the case was corrected in this manner: a line in ink was drawn through the word "Juvenile," immediately following which the words "Superior Court" were written in ink; and the correction was initialed "T.M."; so that the title as thus corrected was made to read: "In the Superior Court of the State of California in and for the City and County of San Francisco Department No. 8." The copy furnished the sheriff was not so corrected.

We find nothing in the foregoing state of the record which would warrant this court in holding, contrary to the minutes of the superior court, that the judgment of sentence was not pronounced by the judge thereof, sitting as such.

It is asserted in defendant's brief that the correction was made by the trial judge, and that it was made subsequent to the filing of the notice of appeal; but there is nothing whatever in the record to substantiate such assertion. For aught that appears it may have been corrected by the party who prepared the document either prior to or at the time it was presented to the judge for signature, and then initialed by the judge before the document was signed and filed. In any event, it was well within the province of the trial court to correct the copy at any time after it was filed with the papers in the case and prior to the filing of the notice of appeal, in order to make it speak the truth; and there is nothing in the record to show that the correction was not so made within that four-day period of time.

There is an unsigned typewritten note at the bottom of the corrected copy below the signature of the judge, which was evidently added by the clerk, showing that subsequent to the termination of the proceedings in the superior court relating to the pronouncement therein of the judgment of sentence the corrected copy of the judgment was entered in the records of the juvenile court. Obviously, however, whatever may have been done by the clerk in this respect can have no effect upon

the legality of the proceedings theretofore had in the superior court.

After all, if it were found that there was an irregularity in making the correction it would not constitute ground for setting aside the conviction and granting a new trial. It would merely necessitate the resentencing of the defendant, in the same department of the superior court in which he was convicted, and by the same judge. (*People* v. *Erbel*, 72 Cal. App. 543 [237 P. 769].)

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 26, 1945.