**Ramón Mirabal CARRIÓN, Petitioner,**

v.

**Balbino GONZALEZ, Superintendent of the San Juan District Jail, Respondent.**

**No. 8994 C.**

United States District Court
D. Puerto Rico, San Juan Division.

Nov. 10, 1954.

R. V. Perez Marchand, Rio Piedras, P. R., and Santos P. Amadeo, Santurce, P. R., for petitioner.

Ruben Rodriquez Antongiorgi, U. S. Atty., San Juan, P. R., for respondent.

SNYDER, District Judge.

This is a petition for a writ of habeas corpus filed by Ramón Mirabal Carrión in which he alleges that he is being illegally restrained of his liberty by virtue of an indictment filed in this Court charging him with a violation of the Smith Act, 18 U.S.C. § 2385. He contends that said Act ceased to apply to Puerto Rico once the Constitution of the Commonwealth of Puerto Rico went into effect.

The petition is denied for substantially the same reasons stated in Cosentino v. International Longshoremen's Ass'n, D.C., 126 F.Supp. 420, decided by this Court on October 2, 1954. As in the latter case, which involved the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq., the Smith Act was approved prior to 1952, clearly applied to Puerto Rico at that time, and has not been amended to date with reference to applicability. The Smith Act therefore still applies to Puerto Rico where as here it is being applied in the same manner as it would be applied in one of the States of the Union.

In the Cosentino case the Court left open, as unnecessary to decide in that case, whether the result would be differ-

ent " * * * if this case had arisen in an industry which was not engaged in Interstate Commerce.", or " * * * if the statute before us had been enacted * * since the enactment and acceptance by the people of Puerto Rico of Act No. 600." For the same reason, similar questions are left open in this case. Cf. Magruder, The Commonwealth Status of Puerto Rico, 15 Pitts.U.L.Rev. 1, 18: " * * * [M]ay it possibly be contended that since the coming into effect of the Constitution of the Commonwealth of Puerto Rico, Acts of Congress like the Mann Act [18 U.S.C.A. § 2421 et seq.], and the National Labor Relations Act [29 U.S.C.A. § 151 et seq.] can no longer be given any greater effect as applied to Puerto Rico than as applied to the States of the Union; that otherwise there would be continued regulation by Congress of purely local affairs confided to the exclusive jurisdiction of the Commonwealth of Puerto Rico?"

At the oral argument of the Cosentino case it was contended that the author of this opinion, then an Associate Justice of the Supreme Court of Puerto Rico, took a contrary position when he testified in 1950 before Committees of Congress in support of the bill which with minor variations became Act No. 600, 48 U.S.C.A. § 731b et seq.[1] However, that testimony does not conflict either with the holdings in this case and the Cosentino case or with the statement in the oral opinion of the Court in the Cosentino case that it was " * * * satisfied that Puerto Rico is no longer a Territory in the sense that the term is used in the Constitution and the cases." It is true that in the lengthy statement of the witness there is a sentence which reads as follows: "The economic and legal relationship between Puerto Rico and the United States remains intact."[2] But the latter sentence does not mean, as some seem to believe, that in the opinion of the witness Act No. 600 would result in no change in the status of Puerto Rico. Ideas are prisoners of the language used to express them. And perhaps the witness failed in his effort to state his views with unmistakable clarity and precision. But the above-quoted sentence should be read in its context. Throughout his entire statement the witness pointed out that, legally speaking, Puerto Rico was governed at that time by Congress.[3] The witness advocated a change in the *basis* of the relationship between Puerto Rico and the United States. His thesis was that, as provided in the pending bill, this relationship should be predicated on the *consent* of the parties. In this context, the above-quoted sentence meant that the principal *terms* of the relationship—certain provisions of the former Organic Act, by agreement of the parties, would become the Puerto Rican Federal Relations Act—would not be changed under the pending bill. But the language and tenor of the statement as a whole spell out the view of the witness that the *basis* of the relationship—consent of both parties, as compared with the previous situation where Congress unilaterally enacted the Organic Act—would be completely different.[4] The result was the

1. Statement of A. Cecil Snyder. Hearings before the Committee on Public Lands, House of Representatives, 81st Congress, on H.R. 7674 and S. 3336, Serial No. 35, pp. 51–59, hereinafter cited as Hearings. A similar statement was made by the same witness before a Senate Committee. Hearing before a Subcommittee on Interior and Insular Affairs, United States Senate, 81st Congress, on S. 3336, pp. 20–26.

2. Hearings, supra, p. 54.

3. The witness stated that " * * * Congress could * * * rule * * *

Puerto Rico autocratically, *although I need hardly state that the traditions and action of the Congress have always been to the contrary.*" (Italics supplied.) Hearings, supra, p. 52. The witness was obviously talking about the past; Act No. 600 was precisely designed to change that situation.

4. Gutiérrez Franqui and Wells, The Commonwealth Constitution, Annals, January 1953, 33, stated in substance what the witness had in mind when they pointed out at p. 34: "Although the provisions of the Federal Relations Act are identical with those of the Organic Act which were

" * *. * present commonwealth status [which] is unprecedented in our American history and has no exact counterpart elsewhere in the world."[5] Cf. Part I of People v. Figueroa, decided November 4, 1954, a copy of which is attached as an Appendix of this opinion.

For the reasons stated the petition for a writ of habeas corpus on the ground that the Smith Act does not apply to Puerto Rico is denied.

## Note No. 15537

Opinion of the Court delivered by Mr. Chief Justice Snyder, November 4, 1954.

Manuel Figueroa was tried in the Superior Court in 1953 by the court without a jury and convicted on a felony charge of buying personal property knowing it was stolen, in violation of § 438 of the Penal Code, 1937 ed. He has appealed from the judgment sentencing him to imprisonment of 4 to 6 months. The only assignment is that the trial court erred in permitting one of the attorneys for the defendant to waive the right of the defendant to a trial by jury.

The defendant concedes that trial by jury on a felony charge may be waived in this jurisdiction; his theory, however, is that the waiver must be by the defendant personally and not through counsel.

Art. II, § 11, par. 2 of our Constitution provides that the defendant in a felony case " * * * shall have the right of trial by an impartial jury * * * ". 48 U.S.C.A. § 731d note.[1] Previously, there was no guaranty in our Organic Acts for trial by jury, either in civil or criminal cases. The matter was left for the Legislature of Puerto Rico to determine. Balzac v. People of Porto Rico, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627. The Legislature exercised this power by providing that a defendant shall have the right to trial by jury in felony cases and certain misdemeanors; but if the defendant did not affirmatively elect trial by jury, this right was waived. Section 178, Code of Criminal Procedure, 1935 ed.[2]

Article II, § 11, par. 2 converted the previous statutory right to a trial by jury in a felony case into a constitutional

not repealed by Section 5 of Public Law 600, they actually represent a new basis for relations between the Commonwealth and the federal government. The Organic Act provisions were adopted only by Congress, whereas the provisions of the Federal Relations Act were adopted in a significantly different way—by being approved both by Congress and by the people of Puerto Rico. The latter gave their approval when they ratified Public Law 600." To the same effect, Magruder, supra, p. 9: "Whereas the power of the United States exercised over Puerto Rico previously had been based upon the force of conquest from Spain, *the new political status* of the island within the American system rests upon the consent of its people." (Italics supplied.)

5. Magruder, supra, p. 5. The fact that such a status was a new concept would not disturb Felix Frankfurter, who in 1914 wrote: "One of the great demands of inventive statesmanship is to help evolve new kinds of relationship so as to combine the advantages of local self-government with those of a confederate union. Luckily, our Constitution has left this field of invention open." Quoted in Hearings, supra, p. 54: Gutiérrez Fran-

qui and Wells, supra, p. 41; Muñoz Marín, Foreign Affairs, July, 1954, pp. 544–545.

1. Art. II, § 11, par. 2 reads as follows: "In all prosecutions for a felony the accused shall have the right of trial by an impartial jury composed of twelve residents of the district, who may render their verdict by a majority vote which in no case may be less than nine."

2. Section 178 reads as follows: "Issues of fact in cases of felony and in cases of misdemeanor, when the information was originally filed in the District Court and the municipal courts also had jurisdiction of the same, shall be tried by jury if the accused or any one of them so elect and such election must be made before the court at the first reading of the docket in which the case appears. If such election be made it shall be entered on the record and if it be not made that fact shall be stated in the record, in which case it shall be considered that the right to be tried by jury has been waived and the case shall be tried by the court. However, if good reasons are shown, the court may grant a trial by jury at any time after the calling of the docket."

right. Informe de la Comisión de Carta de Derechos, XXI Revista Jurídica de la Universidad de Puerto Rico 1, 15–16; Notes and Comments on the Constitution of the Commonwealth of Puerto Rico, 42. But the debate in the Constitutional Convention made it crystal clear that par. 2 was not intended to make trial by jury in felony cases mandatory in Puerto Rico. The right to a trial by jury in such cases—although now a constitutional rather than a statutory right—remains as in the past a privilege of the defendant who may waive it. Diario de Sesiones, Convención Constituyente de Puerto Rico, 605; Ramos v. Rivera, 68 P.R.R. 509, 520. The result is that § 178 of the Code of Criminal Procedure is no longer needed to guarantee the right to trial by jury in felony cases. But § 178 remains in effect not only for the purpose of giving a defendant the right of trial by jury in certain misdemeanor cases, but also to provide the method of waiver of the right of trial by jury.

The defendant concedes that in Puerto Rico trial by jury may be waived by the defendant. He argues, however, that the waiver must be by the defendant personally and not through counsel. His theory is predicated (a) on a proposition of constitutional law and (b) on a matter of statutory interpretation. We examine first the constitutional question.

## I

Under Article III, Section 2, clause 3 and the Sixth Amendment of the United States Constitution a defendant is entitled to trial by jury in a criminal case in the Federal Courts. The Supreme Court of the United States has held that these Federal constitutional provisions do not establish the jury as a part of the frame of government or as a jurisdictional element of a trial court. On the contrary, trial by jury under the Federal Constitution is a privilege of the defendant, which the latter may waive. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854. See State v. Hernández, 1942, 46 N.M. 134, 123 P.2d 387; Oppenheim, Waiver of Trial by Jury in Criminal Cases, 25 Mich.L.Rev. 695; Griswold, The Historical Development of Waiver of Jury Trial in Criminal Cases, 20 Va.L.Rev. 655; 30 Col.L. Rev. 1063.[3]

The Patton case also prescribed the conditions for waiver of trial by jury. It said, 281 U.S. at page 312, 50 S.Ct. at page 263: "* * * before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant." Rule 23(a) of the Federal Rules of Criminal Procedure, 18 U.S.C. A., restates the method of waiver outlined in the Patton case, with the addition that the waiver must be in writing. See Whitman, Federal Criminal Procedure 167–168, 170.[4]

The defendant contends that the right of trial by jury provided in Article II,

---

3. The Supreme Court of the United States has also held that a defendant who has competently and intelligently waived his right to counsel may likewise validly waive his right to trial by jury without the advice of counsel. Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268. See Annotation, 143 A.L.R. 445; 41 Mich.L.Rev. 495; 91 U. of Pa.L.Rev. 76; 55 Harv.L.Rev. 1209. This does not mean, however, that a defendant with counsel *must* waive this right personally. On the contrary, as hereinafter noted in II, the normal—and most effective—rule is for a defendant to act through counsel, both as to waiver of trial by jury and as to other questions.

4. Rule 23(a), as found at 327 U.S. 833, 850, reads as follows: "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government."

The Advisory Committee note to Rule 23(a), paragraph 2, reads as follows: "The provision for a waiver of jury trial by the defendant embodies existing practice, the constitutionality of which has been upheld. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854; Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268; cf. Rules 38 and 39 of Federal Rules of Civil Procedure. Many States by ex-

§ 11, par. 2 of our Constitution may be waived only in the manner established in the Patton case. His reasoning is as follows: Public Law 600, authorizing the people of Puerto Rico to adopt a constitution, provided that it shall contain a bill of rights. 64 Stat. 319, 48 U.S.C.A. §§ 731b–731e. This indicated the special interest in a bill of rights. The latter, including the right to a trial by jury in felony cases, was approved by Congress when it accepted the Constitution. According to the defendant, "Therefore, the right to trial by jury exists in Puerto Rico by express provision of the Congress. For this reason, in order for the exercise of the constitutional right to trial by jury in Puerto Rico to be more effective, it must be guaranteed under the same conditions which guarantee this right in the Federal Courts."

We cannot agree. The defendant has cited no case and we know of none which affirmatively holds that under the Federal Constitution or under Federal Rule 23(a) the defendant must waive a jury personally rather than through his counsel.[5] But even if we assume that the Federal constitutional or statutory rule requires waiver of the jury by the defendant personally rather than by counsel, the said Federal rule does not inexorably require the same method of waiver in our courts. The defendant argues in effect that the Federal rule governs in our courts on the theory (a) that our Con-

stitution—particularly Article II, embodying the bill of rights, and more particularly, par. 2 of § 11, establishing the right of trial by jury—is a Federal law; and (b) that as a Federal law par. 2 must be construed as incorporating the Federal rule with reference to the method by which a defendant may waive his right to trial by jury. For the reasons hereinafter stated, we reject this argument.

Our Organic Acts were Federal laws. The meaning of their provisions was therefore authoritatively determined by the Court of Appeals for the First Circuit and by the Supreme Court of the United States, and not by us. Gallardo v. González, 1 Cir., 1944, 143 F.2d 947, 949–950; Buscaglia v. District Court of San Juan, 1 Cir., 1944, 145 F.2d 274; Arroyo v. Puerto Rico Transp. Authority, 1 Cir., 1947, 164 F.2d 748; Ballester Hermanos v. Tax Court, 66 P.R.R. 531, 534; footnote 2, reversed on other grounds, Buscaglia v. Ballester, 1 Cir., 1947, 162 F.2d 805, certiorari denied, 332 U.S. 816, 68 S.Ct. 154, 92 L.Ed. 393. But our Constitution stands on a different footing. This has been pointed out by the Court of Appeals for the First Circuit. In Mora v. Mejías, 1953, 206 F. 2d 377, Chief Judge Magruder, speaking for the court, said at page 382 that "* * * the Constitution of the Commonwealth of Puerto Rico contains a due process clause, which will be *author-*

---

press statutory provision permit waiver of jury trial in criminal cases. See A.L.I. Code of Criminal Procedure Commentaries, pp. 807–811."

The requirement that the government and the court must consent to the waiver has been criticized on the ground that this impairs the theory that the right to waive a jury is exclusively a privilege of the defendant. Orfield, Criminal Procedure from Arrest to Appeal 393; Oppenheim, supra, p. 736; Grant, Waiver of Jury Trial in Felony Cases, 20 Calif. L.Rev. 132, 161; 45 Harv.L.Rev. 932; 27 Ill.L.Rev. 447; 41 Mich.L.Rev. 495; 6 Tulane L.Rev. 660, 664; Annotation, 79 A.L.R. 563, 567; § 266, A.L.I. Code of Criminal Procedure. Under § 178 of the Code of Criminal Procedure the choice rests with the defendant alone.

5. The Patton case, 281 U.S. at page 312, 50 S.Ct. at page 263 and Federal Rule 23 (a) require waiver by "the defendant". Quaere, whether this means that the defendant must personally waive the jury. This may have been the intent of the draftsmen of Rule 23(a), in view of the provision in Form 42 for signature of the waiver by the defendant himself. See Whitman, Federal Criminal Procedure, page 466. In any event, the Federal rule is not so clear as the California constitution hereinafter discussed which makes it plain that the defendant must personally waive the jury. Cf. Jabczynski v. United States, 7 Cir., 1931, 53 F.2d 1014, certiorari denied, 285 U.S. 546, 52 S.Ct. 395, 76 L.Ed. 937.

*itatively* interpreted and applied by the Supreme Court of Puerto Rico *as a matter of local law."* (Italics ours.)

Under the terms of Public Law 600 the Constitution could not go into effect until acceptance thereof by Congress. And Congress gave its acceptance under certain conditions, which the people of Puerto Rico thereafter approved. Public Law 447, 66 Stat. 327, 48 U.S.C.A. § 731d note. But this does not militate against our conclusion that the Constitution is a local basic charter of government and not a federal law. Under Art. IV, § 3 of the United States Constitution, providing that the power to admit new states is vested in Congress, the latter has in the past attached conditions to the admission of States into the Union; in some instances constitutions of states have not gone into effect until approved by Congress. Permoli v. Municipality No. 1 of City of New Orleans, 1845, 3 How. 589, 11 L.Ed. 739; Coyle v. Smith, 221 U.S. 559, 31 S.Ct. 688, 55 L.Ed. 853; Willoughby on The Constitution of the United States 403–406; Rottschaefer on. The Constitutional Law 119; Statement of Hon. Luis Muñoz Marín, Governor of Puerto Rico, Hearing before the Committee on Interior and Insular Affairs, United States Senate, 1950, p. 9; 98 Cong.Rec. 6188.[6] Nevertheless, the Supreme Court of the United States has uniformly held that the meaning of the provisions of state constitutions and statutes is for the state courts to determine. American Federation of Labor v. Watson, 327 U.S. 582, 596, 66 S.Ct. 761, 90 L.Ed. 873; Rescue Army v. Municipal Court, 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666; Spector Motor Service v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725; People v. Romero, 71 P.R.R. 62, 65, and cases cited; Rottschaefer, supra, 116. In the same

---

6. After admission into the Union, the new states are on an "equal footing" with the other states. Consequently, a new state may, after admission, free itself of any condition which places it in a position of inequality. But it cannot repudiate any conditions which might have been imposed by valid Federal legislation after its admission. See Coyle v. Smith, supra; Skiriotes v. Florida, 313 U.S. 69, 77, 61 S.Ct. 924, 85 L.Ed. 1193; United States v. California, 332 U.S. 19, 29, 30, 67 S.Ct. 1658, 91 L.Ed. 1889; United States v. Texas, 339 U.S. 707, 715 et seq., 70 S.Ct. 918, 94 L.Ed. 1221; State of Alabama v. Texas, 347 U.S. 272, 274, 74 S.Ct. 481, concurring opinion of Mr. Justice Reed; Rottschaefer, supra, p. 119; Willoughby, supra, pp. 310–314; Swisher, American Constitutional Development, pp. 39, 557; Monnet, Violation by a State of the Conditions of its Enabling Act, 10 Col.L.Rev. 591; Evans, Cases on Constitutional Law, 4th ed. by Fenwick, p. 83.

As to the Commonwealth of Puerto Rico, see Law 600, Law 447, and Resolution 34 of the Constitutional Convention, dated July 10, 1952. In Resolution 34 the Convention accepted the conditions proposed in Law 447, including the addition of a new sentence to § 3 of Article VII of the Constitution reading as follows: "Any amendment or revision of this constitution shall be consistent with the resolution enacted by the Congress of the United States approving this constitution, with the applicable provisions of the Constitution of the United States, with the Puerto Rican Federal Relations Act, and with Public Law 600, Eighty-first Congress, adopted in the nature of a compact". 66 Stat. 327.

Resolution 34 explains the acceptance of this new sentence as follows: "Whereas, as it appears from the report of the corresponding Committee of the Constitutional Convention, from the debates in the convention and from the public explanations relative to Article VII of the Constitution of the Commonwealth of Puerto Rico, it was always understood by the people of Puerto Rico and by their representatives in the Constitutional Convention that amendments to the Constitution would have to be adopted in conformity with the fundamental provisions embodied in the Compact agreed upon between the people of Puerto Rico and the Congress of the United States; * * *";

According to Muñoz Marín, Puerto Rico and the U. S., Their Future Together, Foreign Affairs, July 1954, 541, 547: "It [the Commonwealth] makes and can change its constitution within the terms of the compact, which includes applicable principles of the Constitution of the United States." (Matter in brackets ours.)

way, as indicated by our Court of Appeals in the Mora case, the meaning of the Constitution of the Commonwealth of Puerto Rico is fixed by this Court.

The Constitution was approved by the elected representatives of the people of Puerto Rico sitting in Constitutional Convention. This occurred after detailed consideration of each clause in committee and in debate on the floor of the Convention. Finally, the people themselves voiced their approval at the polls. The committee reports and the debates on the floor—in addition to the text itself—are the primary sources in the task of determining the meaning of particular provisions of the Constitution. See González v. Superior Court, 75 P.R.R. ——, decided December 30, 1953; The People of Puerto Rico v. Superior Court, 75 P.R.R. ——, decided December 18, 1953; People v. Hiraldo, 76 P.R.R. ——, decided July 21, 1954. Under those circumstances it is impossible to believe that the Constitution—a product of local draftsmanship and debate—is in legal effect a Federal law the meaning of which must be definitively established by the Court of Appeals for the First Circuit or by the Supreme Court of the United States, and not by us.

In Law 600 Congress said "That, fully recognizing the principle of government by consent, this Act is now adopted in the nature of a compact so that the people of Puerto Rico may organize a government pursuant to a constitution *of their own adoption.*" 48 U.S.C.A. § 731b. (Italics ours.) The people of Puerto Rico accepted this offer. They adopted their own Constitution. In the preamble thereof they stated that *"We, the people of Puerto Rico * * * do ordain and establish this Constitution* for the commonwealth which, in the exercise of our natural rights, we now create within our union with the United States of America." (Italics ours.) The subsequent role of Congress did not result in making the Constitution a Federal law. Rather " * * * pursuant to congressional authority * * * [the Constitution] was approved by the people and *accepted* by Congress in 1952." Clark and Rogers, The New Judiciary Act of Puerto Rico: A Definitive Court Reorganization, 61 Yale L.J. 1147. (Italics ours.) It follows that our Constitution is a local Constitution and not a Federal law. See Mora v. Mejías, D.C.Puerto Rico 1953, 115 F.Supp. 610, 612. Cf. Mora v. Torres, D.C.Puerto Rico 1953, 113 F.Supp. 309, affirmed in Mora v. Mejías, supra, 206 F. 2d 386–388.[7]

Our conclusion is reinforced by Article VII which establishes the procedure for amending the Constitution. For a time the fate of the Constitution was jeopardized by a proposal that Congress accept the Constitution on condition that amendments thereto be subject to its approval. When Law 600 and the Constitution were before Congress, their proponents made it clear that a requirement that amendments to the Constitution must be approved by Congress would not be acceptable to them. Statement of Honorable Luis Muñoz Marín, Governor of Puerto Rico, Hearing before the Committee on Public Lands, 81st Cong., on H.R. 7674, Serial No. 26 (1950), pp. 8, 11, 14, 17; Honorable Antonio Fernós Isern, Resident Commissioner of Puerto Rico, The Significance of the Reform, Lecture at Princeton University, 1948, p. 9; 98 Cong.Rec. pp. 6187, 6200, 7979–7983; Muñoz Amato, Congressional Conservatism and Puerto Rican Democracy in the Commonwealth Relationship, XXI Revista Jurídica de la Uni-

---

7. "What is a Constitution? It is a constituent act of people who have freely determined to organize themselves into a body politic and to prescribe for themselves a basic framework of self-government. That is just what the people of Puerto Rico have done, under authority of Pub.L. 600." Magruder, The Commonwealth Status of Puerto Rico, 15 Pitts.U. L.Rev. 1, 14. Article I of the Constitution, which Congress accepted, declares: "The Commonwealth of Puerto Rico is hereby constituted. Its political power emanates from the people and shall be exercised in accordance with their will, within the terms of the compact agreed upon between the people of Puerto Rico and the United States of America."

versidad de Puerto Rico 321, 324–6, 285 The Annals 23, 25–26. After considerable debate, Congress rejected a provision calling for such Congressional approval. Conference Report No. 2350, House of Representatives, 82d Congress, 2d session, to accompany H.J.Res. 430, Public Law 447. Consequently, under Article VII, except for restrictions embodied in Law 447 not relevant here, amendments of the Constitution go into effect without submission thereof to Congress.[8]

If the Constitution had provided that amendments thereto were subject to the approval of Congress, it would not really be a constitution, as Congress says it is, 66 Stat. 327; it would be just another Organic Act approved and enacted by Congress. See Mora v. Mejías, supra, 206 F.2d 387. The Second Vice President of the Constitutional Convention has characterized the provision in Article VII that the right to amend the Constitution is vested exclusively in the people of Puerto Rico as " * * * the heart of Commonwealth status." He has

pointed out that a requirement for approval of amendments by Congress " * * * would have reduced the people of Puerto Rico to the role of a drafting agency for Congress." Gutiérrez Franqui and Wells, The Commonwealth Constitution, 285 The Annals 33, 40.[9]

Under Article VII the people of Puerto Rico may make drastic changes in the Constitution without submission thereof to Congress. They could, for example, modify or even eliminate the right to trial by jury.[10] And it could scarcely be contended that such an amendment was a Federal law. By the same token, the original provisions of the Constitution— including par. 2 of § 11 of Article II—are and must be treated as a local Constitution and not merely just another Federal law applicable to Puerto Rico.[11]

The fact that questions of local law, including the meaning of provisions of our Constitution, may be raised on appeal from this Court to the Court of Appeals for the First Circuit does not affect our conclusion. Even under the Organic Act our interpretation of local statutes was

8. "Article VII provides that the Constitution can be amended only by the Puerto Rican people and their representatives; the United States Congress has no power to change it." Wells, The Nature of Puerto Rican Government and Politics, Aspect 2, Netherlands Universities Foundation for International Co-operation Symposium on Developments towards Self-government in the Caribbean Commission Territories, 1 (Sept., 1954).

9. Chief Judge Magruder has made the same point. He has said that under the proposal to require Congressional approval of amendments to the Constitution " * * * the people of Puerto Rico would not be accorded full freedom to determine the structure and detail of their local self-government. In effect all that they would be empowered to do would be to propose to the Congress amendments of the Organic Act covering their affairs (which indeed they could have done prior to the passage of Pub. L. 600); and if the Congress should choose to approve such proposals, then the structure of local self-government would be changed accordingly. Under such a limitation, it would be a misnomer to call the frame of local government

adopted by the people of Puerto Rico a 'Constitution' of their own adoption." Magruder, supra, p. 11.

10. This would not be violative of the requirement in Law 600 that the Constitution must contain a bill of rights. Indeed, as we have seen, Congress did not provide for trial by jury in Puerto Rico under the Organic Acts. Balzac v. People of Porto Rico, supra. The Committee on the Bill of Rights considered proposals that trial by jury be eliminated as a matter of constitutional right. And the provision finally adopted regarding trial by jury is not so broad as the Federal Constitutional provisions therefor.

11. Curiously enough, par. 2 of § 11 of Art. II was one of the few clauses of the Constitution which were debated on the floor of Congress. Senator Stennis offered an amendment to broaden its scope to include all criminal cases. This amendment was rejected by the Senate. The very question of waiver was debated by various Senators, although the specific point before us was not discussed. 98 Cong.Rec. pp. 7971, 7983–7986. Par. 3 was finally accepted by Congress intact as written by the Constitutional Convention.

authoritative unless it was "inescapably wrong." De Castro v. Board of Com'rs, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384; Bonet v. Texas Co., 308 U.S. 463, 471, 60 S.Ct. 349, 84 L.Ed. 401; Romero v. People of Puerto Rico, 1 Cir., 1950, 182 F.2d 864; Cruzado v. People of Puerto Rico, 1 Cir., 1954, 210 F.2d 789; Romero v. People of Puerto Rico, supra. Consequently, review by the Court of Appeals in such cases, according to Chief Judge Magruder, " * * * has come to be pretty much of a dead letter." Magruder, supra, p. 19. Obviously, there are even greater reasons why the meaning of the provisions of our Constitution must be fixed by this Court, and not by the Federal courts.[12]

For the reasons stated, we hold that Art. II, § 11; par. 2 of our Constitution is not a Federal law. Rather it is a provision of the Constitution of the Commonwealth of Puerto Rico the meaning of which must be settled by this Court. We assume that the Patton case requires a defendant to waive a jury personally in the Federal courts. But the Constitutional Convention did not incorporate this requirement in par. 2. Instead it left the manner of exercise of the waiver to the Legislature. And the latter has not amended § 178 of the Code of Criminal Procedure, the statute covering this question. The problem is therefore reduced to determining whether § 178 requires a defendant to waive a jury personally.[13]

## II

We now turn to the contention of the appellant that under § 178 of the Code of Criminal Procedure a defendant must waive trial by jury personally rather than through counsel. He argues that § 5 of the Code of Criminal Procedure—copied from § 684 of the California Penal Code—requires this result in view of its language and in view of the California cases holding that the parties to a criminal case are the People and the defendant and that the latter does not include counsel for the defendant.[14] The defendant also relies on California cases holding that trial by jury in a criminal case must be waived by the defendant personally.

12. Chief Judge Magruder has in effect suggested that the right of appeal from this Court to the Court of Appeals for the First Circuit be eliminated and that it be replaced with a provision that our judgments " * * * shall be reviewable only in the Supreme Court of the United States, and then on the same basis as the jurisdiction presently given to the Supreme Court to review judgments of the highest court of a state." Magruder, supra, p. 19.

13. There are two additional flaws in the defendant's argument. First, even if he were right that par. 2 is a Federal law, par. 2 does not specifically provide that the defendant must waive his right to trial by jury personally. Congress was not obliged to provide trial by jury in Puerto Rico. Balzac v. People of Porto Rico, supra. A fortiori, Congress was not required to—and did not—adopt for the local courts of Puerto Rico the judicially-created rule evolved by the Supreme Court of the United States in the Patton case with reference to waiver of trial by jury in interpreting the Federal Constitution.

Second, the Patton rule requires consent of the government and of the trial court, as well as the defendant, before waiver of trial by jury is effective. Although he contends that we are bound by the Patton rule, the defendant's thesis apparently is that only the defendant need consent, provided he does it personally and not merely by counsel. But if we agreed with the defendant that the Patton case was controlling on us as a matter of constitutional law, we would be compelled to hold that the consent of the government and the court is also required and that § 178 of the Code of Criminal Procedure is invalid to the extent that it vests exclusively in the defendant the privilege to waive the jury. Also, the Patton case apparently requires unanimity for a verdict by the jury, cf. Hibdon v. United States, 6 Cir., 1953, 204 F.2d 834, 37 A.L.R.2d 1130, criticized adversely in 52 Mich.L.Rev. 911, whereas § 11 of Article II of our Constitution permits a verdict by a majority vote of not less than nine.

14. Section 5 reads as follows: "A criminal action is prosecuted in the name of 'The People of Puerto Rico' as a party against the person charged with the offense." See 7 Cal.Jur. 896; 14 Cal.Jur.2d 190–191; People v. Jung Qung Sing, 1886, 70 Cal. 469, 11 P. 755.

828

There are, however, several differences between our situation and that obtaining in California. In the first place, there were two stages in the development of this question in California. Prior to 1927 under Article 1, § 7 of the California Constitution a trial by jury could be waived only in misdemeanor cases "by the consent of both parties".[15] It was held under this provision that neither the defendant nor his counsel could waive the right to a trial by jury in a felony case. Ex parte Bracklis, 1921, 52 Cal.App. 274, 198 P. 659; People v. Nakis, 1920, 184 Cal. 105, 193 P. 92. But the appellant has cited no case and we have found none which actually holds that prior to 1927 trial by jury could not be waived under Article 1, § 7 of the Constitution through counsel in a misdemeanor case. Cf. Goodman v. Superior Court, 1908, 8 Cal.App. 232, 96 P. 395; In re Fife, 1895, 110 Cal. 8, 42 P. 299; Ex parte Wong You Ting, 1895, 106 Cal. 296, 39 P. 627; Taylor v. Reynolds, 1891, 92 Cal. 573, 28 P. 688; Powelson v. Lockwood, 1890, 82 Cal. 613, 23 P. 143; In re Miller, 1890, 82 Cal. 454, 22 P. 1113; 15 Cal. Jur. 345; 8 Cal.Jur. 666; 7 Cal.Jur., Ten Year Supp., 1945 Revision, 423–424; 14 So.Calif.L.Rev. 473.[16] It would therefore appear that, prior to 1927, § 684 of the California Penal Code—equivalent to § 5 of our Code of Criminal Procedure —did not have the importance attributed to it by the defendant with reference to waiver of trial by jury.

However, putting to one side the question of whether, prior to 1927, a defendant was required to waive a jury personally in misdemeanor cases, the situation in California after 1927 is more relevant to the problem before us. In that year the California Constitution was amended to provide in part that "* * * A trial by jury may be waived in all criminal cases, by the consent of both parties, expressed in open court *by the defendant and his counsel,* and in civil actions by the consent of the parties, signified in such manner as may be prescribed by law." (Italics ours.) For our purposes this was much more specific than the earlier clause and made it quite clear that the defendant personally, as well as his counsel, must waive the jury in a criminal case. And the cases decided under the 1927 amendment —which are the cases relied on here by the appellant—have uniformly so held: People v. Washington, 1949, 95 Cal.App. 2d 454, 213 P.2d 70; People v. Walker, 1948, 33 Cal.2d 250, 201 P.2d 6, 16; People v. Pughsley, 1946, 74 Cal.App.2d 70, 168 P.2d 27; People v. Voice, 1945, 68 Cal.App.2d 610, 157 P.2d 436; People v. Bastio, 1942, 55 Cal.App.2d 615, 131 P.2d 614; People v. Noland, 1939, 30 Cal.App.2d 386, 86 P.2d 363; People v. Medina, 1935, 9 Cal.App.2d 259, 49 P.2d 332; People v. Pincus, 1933, 131 Cal. App. 607, 21 P.2d 964; People v. Rumsey, 1932, 127 Cal.App. 272, 15 P.2d 780; People v. Woods, 1932, 126 Cal.App. 158, 14 P.2d 313; People v. Spinato, supra; People v. Wilkerson, 1929, 99 Cal.App. 123, 278 P. 466; People v. García, supra; 14 So.Calif.L.Rev. 473, 474.

In Puerto Rico we have no specific constitutional provision as now exists in California requiring the defendant to waive a jury personally. Here the situation is quite different. Our Constitution is silent as to waiver. Moreover, § 178—our only statute dealing specifically with this subject—is unlike § 1042 of the California Penal Code, which requires an affirmative waiver. On the

---

15. Article 1, § 7 of the California constitution read in part, prior to 1927, as follows: "A trial by jury may be waived in all criminal cases not amounting to felony, by the consent of both parties, expressed in open court, and in civil actions by the consent of the parties, signified in such manner as may be prescribed by law."

16. Two cases cited by the appellant—People v. García, 1929, 98 Cal.App. 702, 277 P. 747, and People v. Spinato, 1929, 100 Cal.App. 600, 280 P. 691—state in dicta that prior to 1927 the rule was that in a misdemeanor case the defendant must waive a jury personally. However, these cases did not involve misdemeanors and were decided after the new constitutional provision went into effect.

contrary, under § 178 trial by jury must be affirmatively elected or else it is waived. People v. Campos, 69 P.R.R. 837, 841. We therefore fail to see how in Puerto Rico § 5 can be read as injecting into § 178 a requirement that some "action" must be taken by the defendant personally in order for a jury to be validly waived. Section 178 provides in effect that silence at the arraignment constitutes a waiver of trial by jury. It would seem absurd to say that such "silence" must be that of the defendant rather than of his counsel. It follows that there is nothing in §§ 178 and 5 which makes waiver by counsel insufficient and requires an affirmative waiver by the defendant personally of his right to a trial by jury. Territory v. Van Dalden, 1934, 33 Haw. 113, 131; see Shores Co. v. Iowa Chemical Co., 1936, 222 Iowa 347, 268 N.W. 581, 106 A.L.R. 198.[17]

The appellant argues that in view of the elevation of trial by jury in a criminal case to the status of a constitutional right, we should hold that it may be waived only by some affirmative action of the defendant. But statutes similar to § 178—providing that failure to elect a jury constitutes waiver thereof—have been sustained in states where trial by jury is a constitutional right. A.L.I. Code of Criminal Procedure, Commentary, 807, 809; 50 C.J.S., Juries, § 108, page 819, cases cited in footnote 92; State v. Berg, 1946, 237 Iowa 356, 21 N.W.2d 777; see Orfield, supra, pp. 390–395. In the same way, the Federal Constitution establishes the right to trial by jury in civil cases; yet Rule 38(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that a jury trial is waived unless demanded. 5 Moore's Federal Practice, 2d ed., pp. 105, 332–333. The short of the matter is that the Legislative Assembly is free to make its own determination on this question. And it has left unamended the provision in § 178 that the failure to elect a jury constitutes waiver thereof.

In Jiménez v. Warden, 74 P.R.R. 240, we held that a sentence predicated on a plea of guilty entered by counsel rather than by the defendant personally was void. But we were compelled to reach this conclusion because of the clear and mandatory language of § 164 of the Code of Criminal Procedure that "A plea of guilty can be entered only by the defendant *himself* in open court, unless upon information against a corporation, in which case it may be put in by counsel." (Italics ours.) In our opinion in the Jiménez case we pointed out that the Federal courts have rejected this rule as based on an outmoded formalism which has no relation to substantial justice. In subsequent cases—People v. Cruzado, 74 P.R.R. ——, and People v. Vargas, 74 P.R.R. 134, affirmed in 1 Cir., 1954, 210 F.2d 789—we made it clear that in the absence of an express statutory provision similar to § 164, the action of the defendant through his counsel would ordinarily be binding. Unlike § 164, the terms of §§ 178 and 5 do not compel us to reach in the present case the obsolete and unrealistic result required by § 164 in the Jiménez case.

In People v. Vargas, supra, and People v. Cruzado, supra, it was held that since the act of an attorney generally binds his client, counsel for a defendant may waive

---

**17.** The defendant asserts that his position is supported by the fact that he elected a jury at the arraignment and that his counsel rather than he personally waived the jury at the beginning of the trial. We disagree. The record is silent as to whether the defendant made his election at the arraignment personally or through his counsel. But what is more important is that the meaning of § 178 does not depend on the fortuitous conduct of the defendant or his counsel at the arraignment and at the trial.

It should be added that there is no contention of fraud or other misconduct which would vitiate the consent given by the defendant through his counsel. The record shows that two of the three attorneys who represent the defendant on appeal appeared for him at the trial. One of them said: "After having consulted the defendant, we waive trial by jury. We wish the case heard by the court without a jury."

the right of the defendant to be confronted with the witnesses against him without the express consent of the defendant. The defendant, through his counsel, having taken this course of conduct in the hope that it would help him, cannot thereafter repudiate it.[18] By the same token, under § 178 the election of trial by court rather than trial by jury may be validly made by counsel for the defendant.

The judgment of the Superior Court will be affirmed.

---

18. "When an accused is represented by counsel, it is generally to be assumed that counsel adapts his trial tactics to what in his judgment is for the best interests of the accused. If the accused, being present, manifests no dissent, it is usually fair to assume that he approves of, or at least acquiesces in, the decisions taken in open court in his behalf by his counsel." Cruzado v. People of Puerto Rico, supra, 210 F.2d 791.

"Whether it was best to submit defendant's case for trial to a jury or to the court was a matter for the defendant and his attorney to determine, and they had to determine this before the trial began. * * * It would be a mockery of justice to say that having voluntarily tried his case before the judge and losing, he may then try it again by jury, in the hope of doing better." Fluty v. State, 1947, 224 Ind. 652, 71 N.E.2d 565, 568.