**In the Matter of the Application of Eugene Cuebas ARBONA, Relator,**

v.

**Frank F. KENTON, Warden of the Federal Detention Headquarters in New York City, Respondent.**

United States District Court
S. D. New York.

Dec. 1, 1954.

Reuben Terris, New York City, for relator.

J. Edward Lumbard, U. S. Atty., New York City, for respondent, George H. Bailey, Asst. U. S. Atty., New York City, of counsel.

WEINFELD, District Judge.

Eugene Cuebas Arbona petitions for a writ of habeas corpus to obtain his release from Federal Detention Headquarters where he is held pending a hearing on proceedings to remove him to the District of Puerto Rico for trial.

The warrant of removal is sought upon an indictment[1] returned in the United States District Court for the District of Puerto Rico charging that petitioner and others conspired to commit offenses against the Government of the United States in Puerto Rico in violation of the Smith Act, 18 U.S.C. § 2385, and the general conspiracy statute, 18 U.S.C. § 371. The indictment charges that the conspiracy extended from March 10th, 1946 to the date of its filing October 27th, 1954.

Petitioner alleges that his detention is unlawful in that the Smith Act and the general conspiracy statute ceased to be applicable to Puerto Rico on July 25, 1952, when Commonwealth status was acquired under Public Law 600.[2] However his various contentions are stated, the substance of petitioner's argument is that once the Constitution of the Commonwealth of Puerto Rico went into effect,[3] Puerto Rico became an independent country, maintaining only a very limited and specified relationship to the United States; that this relationship, absent an effective saving clause in the statute which led to the creation of the Commonwealth, did not continue a right in the Government of the United States to prosecute for violations of its criminal statutes committed in Puerto Rico prior to its new status. The saving clause, Section 4 of Public Law 600, continued 48 U.S.C.A. § 734, which provides:

"The statutory laws of the United States not locally inapplicable * * * shall have the same force and effect in Puerto Rico as in the United States * * *."

But petitioner argues that the Smith Act is locally inapplicable because the United States Government ceased to exist in Puerto Rico on July 25th, 1952, when the Commonwealth Constitution went

---

1. The petitioner was originally arrested on October 20th, 1954 upon a commissioner's warrant issued upon a complaint which was filed on October 19th, 1954. The indictment was returned on October 27th, 1954 while the removal proceedings were pending.

2. 64 Stat. 319, 48 U.S.C.A. §§ 731b to 731e.

3. 48 U.S.C.A. § 731d note. Approved by Congress July 3rd, 1952, 66 Stat. 327, proclaimed in force by the Governor of Puerto Rico, July 25th, 1952.

into effect—that except for matters pertaining to dual citizenship, currency, customs, foreign relations and defense against outside aggression, the Legislative Assembly of Puerto Rico has the right to legislate.

The contention is without merit, and is in conflict with two decisions of the District Court for the District of Puerto Rico.[4] These decisions, both rendered subsequent to the establishment of the Commonwealth, applied the statutes here in question to crimes committed in Puerto Rico. Carrion v. Gonzalez, D.C. P.R., No. 8994C, 125 F.Supp. 819, is especially pertinent, for it held the Smith Act applicable to one of petitioner's codefendants. These authorities are in accord with the legislative enactments that established the Commonwealth of Puerto Rico.

By enacting Public Law 600 Congress offered a compact to the people of Puerto Rico, which, if approved by them, would lead to the establishment of the Commonwealth of Puerto Rico.[5] The compact was overwhelmingly approved at a referendum held June 4, 1951,[6] and became the basic charter, establishing the Commonwealth's position in the Federal System.

Establishment of the new Constitution repealed many pre-existing laws relating to matters of purely local concern, but continued many statutes governing the relations of Puerto Rico to the United States.[7] Section 4 of Public Law 600 [8] saves certain sections of Title 48 U.S. C.A. relating to Puerto Rico. In addition to Section 734, which extends statutes of the United States to Puerto Rico generally, the sections thus saved include: Section 749, extending laws of the United States relating to navigable waters; Section 863, setting forth provisions for the United States District Court for the District of Puerto Rico in addition to the provisions of Title 28 U.S.C.;[9] Section 867, establishing the qualifications for federal jurors; Section 874, providing: "All judicial process shall run in the name of 'United States of America, ss, the President of the United States,' * * *. All officials shall be citizens of the United States, and, before entering upon the duties of their respective offices, shall take an oath to support the Constitution of the United States and the laws of Puerto Rico." In addition to these sections, petitioner concedes that "the constitution of Puerto Rico gives the United States exclusive rights" with regard to currency, customs, foreign relations and defense against outside aggression.

■ These hallmarks of governmental power, together with the fact that citizens of Puerto Rico are citizens of the

---

4. Carrion v. Gonzalez, D.C.P.R., No. 8994C, 125 F.Supp. 819; United States v. Long, D.C.P.R., 118 F.Supp. 857 (conspiracy to defraud the United States in violation of 18 U.S.C. § 371).

5. 64 Stat. 319, §§ 1, 2, 48 U.S.C.A. §§ 731b, 731c.

6. Magruder, The Commonwealth Status of Puerto Rico, 15 Pitt.L.Rev. 1, 7–10.

7. Committee on Public Lands, H.R. No. 2275, 81st Cong., 2nd Sess., June 19th, 1950. The Committee report states: "It is important that the nature and general scope of S. 3336 be made absolutely clear. The bill under consideration would not change Puerto Rico's fundamental political, social, and economic relationship to the United States. Those sections of the Organic Act of Puerto Rico pertaining to the political, social, and economic relationship of the United States and Puerto Rico concerning such matters as the applicability of United States laws, customs, internal revenue, Federal judicial jurisdiction in Puerto Rico, Puerto Rican representation by a Resident Commissioner, etc., would remain in force and effect, and upon enactment of S. 3336 would be referred to as the Puerto Rican Federal Relations Act. The sections of the organic act which section 5 of the bill would repeal are the provisions of the act concerned primarily with the organization of the local executive, legislative, and judicial branches of the government of Puerto Rico and other matters of purely local concern." United States Code Congressional and Administrative Service, Vol. 2, 81st Cong., 2nd Sess., 1950, pp. 2682–2683.

8. 48 U.S.C.A. § 731e.

9. See Mora v. Mejias, 1 Cir., 206 F.2d 377.

United States, whose rights to due process of law are protected by the Federal Constitution,[10] lead inescapably to the conclusion that there remains a Government of the United States in Puerto Rico.[11] The people of Puerto Rico, by accepting the compact offered by the Puerto Rican Federal Relations Act, have consented to the continuity of relationship with this government and to the continued application of statutes saved under that compact. In this connection Chief Judge Magruder, long a student of Puerto Rican affairs, has commented:

" * * * Congress has reserved the power, without future amendment of the Puerto Rican Federal Relations Act, to enact general legislation applicable to Puerto Rico as well as to the rest of the United States. * * * An instance of this type of legislation is the Selective Service Act of 1948 which applies to the people of Puerto Rico in the same way as it applies to the people of the States of the Union. In enacting such legislation it would no more be necessary to obtain the consent of the Commonwealth of Puerto Rico than it would be to obtain the consent of the State of New York." [12]

Indeed, recognition of the attributes of sovereignty of the United States Government in Puerto Rico is found in the Commonwealth Constitution, which provides:

"Any amendment or revision of this Constitution shall be consistent with the resolution enacted by the Congress of the United States approving this Constitution, with the applicable provisions of the Constitution of the United States, with the Puerto Rican Federal Relations Act, and with Public Law 600, Eighty-first Congress, adopted in the nature of a compact." [13]

Thus, the indictment clearly charges an offense against the United States upon which removal may be had.

This conclusion finds further support in the Preamble to the Puerto Rican Constitution which states that the Commonwealth is created "within our union with the United States of America," thus recognizing that the Commonwealth is a political subdivision of the United States. As such it is a unit of government to which the Smith Act by its own terms extends.[14]

■ If general legislation such as the Selective Service Act is applicable to Puerto Rico [15] to protect the government from foreign enemies, it is difficult to understand why legislation designed to protect the government against internal enemies is not likewise applicable. In view of the continued sovereignty of the United States Government in Puerto Rico, the contention that the power to protect that sovereignty has been extinguished is untenable. The petitioner's detention, pending removal to the District of Puerto Rico for trial is lawful.

Writ discharged.

Settle order on notice.

---

10. Id., 206 F.2d at page 382

11. It is unnecessary to define the exact extent of this relationship, but as has been suggested, "Its present commonwealth status is unprecedented in our American history and has no exact counterpart elsewhere in the world. Clearly that status precludes neither ultimate statehood nor ultimate independence." Magruder, Commonwealth Status of Puerto Rico, 15 Pitt.L.Rev. 1, 5.

12. Id., at 17.

13. Constitution of the Commonwealth of Puerto Rico, Art. VII, Section 3, 48 U.S. C.A. § 731d note.

14. 18 U.S.C. § 2385.

15. Ruiz Alicea v. United States, 1 Cir., 180 F.2d 870.