[No. 21177.  In Bank.—March 9, 1895.]

Ex Parte WONG YOU TING, on Habeas Corpus.

CRIMINAL LAW — PRACTICING MEDICINE WITHOUT A LICENSE — JURY TRIAL—HABEAS CORPUS.—Where a defendant accused of the offense of practicing medicine without having procured a certificate from the board of examiners, as required by the act regulating the practice of medicine, demanded a trial by jury in the police court, and the police judge denied his demand and proceeded to try and convict him without a jury, he is entitled to be discharged from custody under such a conviction upon a writ of *habeas corpus.*

ID.—CONSTITUTIONAL RIGHT TO TRIAL BY JURY—JURISDICTION OF MUNICIPAL COURT.—The legislature has no power to take away the constitutional right to a jury trial of an offense against the public at large, which falls within the common-law notion of a crime or misdemeanor, and is embraced in the criminal code of the state; and the constitutional guarantee of the right to a trial by jury of such an offense cannot be evaded by the nature of the powers vested in a municipal corporation, or by the nature of the jurisdiction conferred upon municipal courts.

ID.—SUMMARY PROCEEDINGS FOR PETTY OFFENSES.—The guaranties in the various state constitutions of the right of a jury trial do not prohibit the legislature from providing for summary proceedings without a jury in cases of such petty offenses as are enumerated in English statutes in existence at the time of the separation of the American colonies from England, or in cases where the offenses are intrinsically of the same nature and degree as those mentioned in such English statutes.

HEARING in the Supreme Court upon a writ of *habeas corpus* to the chief of police of the City of Los Angeles.

The facts are stated in the opinion of the court.

*John T. Jones,* and *A. B. Hotchkiss,* for Petitioner.

*M. T. Owens,* for Respondent.

McFARLAND, J.—The petitioner is in the custody of the chief of police, under a conviction in the police court of the city of Los Angeles of the offense of practicing medicine without having procured a certificate from a board of examiners, contrary to the provisions of "An act to regulate the practice of medicine," approved April 3, 1876, and an act supplemental thereto which went into effect April 1, 1878 (Stats. of 1875–76, p. 792; Stats.

of 1877–78, p. 918); and he asks to be discharged from such custody on a writ of *habeas corpus* heretofore issued out of this court.

Many of the grounds upon which the discharge is asked cannot be considered on this writ. The only question before us necessary to be decided is whether or not the appellant was entitled to a jury trial. He demanded a trial by jury; but his demand was denied, and the police judge proceeded to try and convict him without a jury. It seems to be admitted by counsel for respondent that if petitioner was entitled to a jury trial and had demanded it, then the judge, sitting without a jury, did not constitute a court having jurisdiction to try the case. The point that the refusal of a jury can be reviewed only on appeal is not made.

The case of *Taylor* v. *Reynolds*, 92 Cal. 573, seems to be determinative of the case at bar in favor of petitioner. Indeed that case was not so strong in favor of the petitioner as the one at bar; for in that case the violation of a city ordinance was involved, while here the petitioner was charged with a criminal offense created by a state law. But it was held in the former case that the action was a general "criminal proceeding," and that therefore the petitioner was entitled to a jury trial; and in the opinion the following language used by Dillon in his work on Municipal Corporations is quoted approvingly: "So here, when the act or omission sought to be punished by imprisonment under a municipal ordinance is in its nature not peculiarly an offense against the municipality, but rather against the public at large, and when it falls within the legal or common-law notion of a crime or misdemeanor, and especially when being of such a nature it is embraced in the criminal code of the state, then the constitutional guaranties intended to secure the liberty of the citizen and the right of a trial by jury cannot be evaded by the nature of the powers vested in the municipal corporation or the nature of the jurisdiction conferred upon the municipal courts." And the foregoing language applies with much greater force to

a case like the one at bar, where the offense charged arises under a general state law, than to a case where the offense arises under a mere municipal ordinance. It is also an answer to the contention that the so-called "Whitney Act" (Deering's Political Code, 716, 717) gives jurisdiction to the judges of police courts of cities "having thirty thousand and under one hundred thousand inhabitants," which included Los Angeles and Oakland, to try misdemeanors without a jury. The language of section 5 of said act relied on is as follows: "And in such of the *cases enumerated in this section* in which trial by jury *is not secured* by the constitution of the state, he may proceed in the first instance without a jury; but on appeal the defendant shall be entitled to trial by jury in the superior court." This language is at least quite uncertain and ambiguous. It is difficult to determine what cases are "enumerated in this section," or whether it is intended to give the accused absolutely a trial by jury in the superior court, if he chooses to appeal. If valid otherwise, it would be a grave question whether it is not invalid for want of uniform operation, in that under its provisions a person charged with violating a general law in any other part of the state would be entitled to a jury trial, while a person charged with the same offense in either of said two cities would be denied the right to such a trial. However, the words "in which trial by jury is not secured by the constitution" leaves the whole question open; and the legislature, under the authorities above cited, did not have the power to take away the constitutional right to a jury trial in a case like the one at bar. The petitioner was accused of an offense "against the public at large" and falling "within the legal or common-law notion of a crime or misdemeanor," and "embraced in the criminal code of the state," and was therefore entitled to the constitutional guarantee of the right to a trial by jury.

There are, no doubt, some cases which do not come within the constitutional guarantee that "the right of trial by jury shall be secured to all and remain invio-

late." It has been held to refer generally to the right of trial by jury as it existed at common law and at the time the constitution was adopted. With respect to the civil, as distinguished from the criminal, law, the right never existed in purely equity cases or in many other proceedings for the enforcement of private rights. It has been held also not to apply here to certain statutory proceedings not known to the common law. It has also been sometimes said in a general way, when the point was not before the court, that it does not apply to a crime created by statute and which did not exist at common law; but this certainly cannot be taken as a correct general statement of the law. No court would hold, for instance, that a person charged with the statutory crimes of embezzlement or displacing part of a railroad, which is a felony, could be legally tried without a jury. Modern improvements and changes in society and business have made it necessary to create felonies unknown to the common law; but, if they had existed in the last century, they certainly would have been triable in England by a jury. In fact, the general rule at common law proper was that accusations of all crimes involving loss of liberty as a punishment were triable by a jury; but parliament (which is supreme) provided by various statutes that there should be summary trials by justices of the peace, without a jury, of certain petty offenses. Blackstone refers to the matter as follows: " By a summary proceeding I mean principally such as is directed by several acts of parliament (for the common law is a stranger to it, unless in the case of contempts) for the conviction of offenders and the inflicting of certain penalties created by those acts of parliament. In these there is no intervention of a jury, but the party accused is acquitted or condemned by the suffrage of such person only as the statute has appointed as his judge." He protests against the extent to which such statutes had gone, and says: " But it has of late been so far extended as, if a check be not timely given, to threaten the disuse of our admirable

and truly English trial by jury, unless only in capital cases." In addition to offenses against the revenue laws and attachments for contempts he describes the class of ordinary petty offenses provided for by such statutes as follows: "Another branch of summary proceedings is that before justices of the peace in order to inflict divers petty pecuniary mulcts and corporal penalties denounced by act of parliament for many disorderly offenses, such as common swearing, drunkenness, vagrancy, idleness, and a vast variety of others, for which I must refer the student to the justice-books formerly cited, and which *used to be* formerly punished by the verdict of a jury in the court-leet." (Vol. 4, p. 281.) And again, speaking of the right of jury trial, he says: " So that the liberties of England cannot but subsist so long as this *palladium* remains sacred and inviolate, not only from all open attacks (which none will be so hardy as to make), but also from all secret machinations which may sap and undermine it, by introducing new and arbitrary methods of trial by justices of the peace, commissioners of the revenue, and courts of conscience. And however *convenient* these may appear at first (as doubtless all arbitrary powers, well executed, are the more convenient), yet let it be again remembered that delays and little inconveniences in the forms of justice are the price that all free nations must pay for their liberty in more substantial matters." (Vol. 4, p. 350.) From the foregoing it clearly appears that those summary proceedings under special statutes were marked innovations upon the common law. But, as they were in existence at the time of the separation of the American colonies from England, it is, perhaps, proper to say that the guaranties in the various state constitutions of the right of jury trial do not prohibit the legislature from providing for summary proceedings without a jury, in cases of such petty offenses as are enumerated in said English statutes, or in cases where the offenses so dealt with are intrinsically of the same

nature and degree as those mentioned in said statutes. But the rule cannot safely be made much broader. This rule would, no doubt, allow the legislature to provide for summary proceedings without a jury against those violating municipal by-laws, proper, where the offenses charged are in their nature similar to those petty offenses mentioned in said English statutes: See 1 Dillon on Municipal Corporations, sec. 433. Of course, cases may arise very difficult of assignment to the proper side of the line of constitutional right to a jury trial, but no absolute rule can be formulated that will dispose of all possible cases. However, in the case at bar the petitioner was clearly entitled to a jury trial. The offense with which he was charged was a violation of a general law of the state; it was punishable by a fine of five hundred dollars and imprisonment for one year; it was not in any sense a minor or petty offense; and such a crime would have been triable at common law by a jury. Parliament could, of course, have provided that a trial for such a crime, or for *any* crime, should be without a jury, because parliament is omnipotent; but American legislatures have no such power, for they are limited by written constitutions.

It is ordered that the petitioner be discharged from custody.

Van Fleet, J., Harrison, J., and Garoutte, J., concurred.