[Nos. F006844, F006865-F006875, F006877-F006880, F006884. Fifth Dist. Apr. 20, 1987.]

THE PEOPLE, Plaintiff and Appellant, v.
STANLEY M. ANDERSON et al., Defendants and Respondents.

COUNSEL

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, and Charles W. Getz IV, Deputy Attorney General, for Plaintiff and Appellant.

Kit Parsons, Kuhs & Parker, Ralph W. Wyatt and Theresa A. LeLouis for Defendants and Respondents.

---

**OPINION**

**FRANSON, Acting P. J.—**

STATEMENT OF THE CASE

These 17 consolidated cases, involving 16 individual defendants, arise from alleged violations of Food and Agricultural Code section 5784[1] and title 3, California Administrative Code, section 3595[2] setting forth mandatory

---

[1]Food and Agricultural Code section 5784 reads in pertinent part: "(b) Any violation of this article or any regulation adopted pursuant thereto relating to the eradication or control of cotton pests is an *infraction* punishable pursuant to this section. Any punishment, other than a fine, imposed on or after July 1, 1977, pursuant to these provisions shall be terminated.

"(c) Any person producing cotton in violation of cotton plowdown dates adopted pursuant to this article is subject to a fine of five hundred dollars ($500). Each acre not in compliance is *a separate additional violation* subject to a fine of five dollars ($5) per acre of land not in compliance." (Italics added.)

[2]California Administrative Code, title 3, section 3595 reads in pertinent part: "(a) Proclamation. The Director of Food and Agriculture finds that infestation of pink bollworm in cotton growing areas of California presents a threat of further spread of pink bollworm and that it is impracticable to eradicate said pest or to prevent its continuing spread unless the provisions of this regulation are required and enforced.

". . . . . . . . . . . .

"(c) Host-Free Districts. The following four areas are declared pink bollworm host-free districts.

"District 1. The entire counties of Imperial, Inyo, Los Angeles, Riverside, San Bernardino, and San Diego.

"District 2. The entire counties of Kern, Kings, and Tulare.

"District 3. The entire county of Fresno south of Shields Avenue and projected lines drawn due east and due west from the ends of Shields Avenue through Fresno County.

"District 4. The entire counties of Madera, Merced, and San Benito and that portion of Fresno County north of Shields Avenue and projected lines drawn due east and due west from the ends of Shields Avenue through Fresno County.

"(d) Requirements. All cotton plants in District one shall be destroyed in a manner described in subsection (e) below by March 1 of each year. All cotton plants in Districts two and three shall be destroyed in a manner described in subsection (e) below by December 20 of each year. All cotton plants in District four shall be destroyed in a manner described in subsection (e) below by December 31 of each year. The remains of any cotton plants, which have not been destroyed as required, are prohibited and constitute a public nuisance subject to abatement pursuant to Section 5782 of the Food and Agricultural Code. No cotton shall be planted in Districts two, three, or four prior to March 20 of each year.

". . . . . . . . . . . .

"(e) Method of Destruction.

"(1) Shredding. All cotton stalks and debris shall be shredded by a power driven shredding device. That device shall effectively reduce stalks to a particle size permitting burial and a

dates for cotton farmers to shred and plow under their cotton stalks. This "plowdown" is deemed necessary to control the pink bollworm. All 17 cases were dismissed by Kern County justice court judges because of what the judges perceived to be an unconstitutional statutory denial of the defendants' right to jury trials.

On the People's appeal to the Appellate Department of the Kern County Superior Court, that court ruled that, insofar as it denied respondents the right to a jury trial, section 5784 of the Food and Agricultural Code was unconstitutional under both the federal and state Constitutions. (U.S. Const., art. III, § 2, cl. 3; Cal. Const., art. I, § 16.) The appellate department based its decision on the *potential* penalties applicable to multiacre violations of the statute including penalty assessments required by law.[3] The potential penalties including assessments for respondents would range from $1,147.50 to $23,375. The appellate department reversed the trial judges' orders dismissing the charges against respondents with directions to reinstate the charges but to allow respondents the right to a jury trial.

At the People's request, the appellate department certified these cases to this court for review "to settle important questions of law" (Cal. Rules of Court, rule 63(a)). We ordered transfer pursuant to California Rules of Court, rule 62(a).

rapid decomposition. That device shall assure that bolls remaining in the field are broken open and the parts scattered.

"(2) Tillage. Following shredding as required above, the land on which any cotton plants were growing during the preceding season shall be tilled in such a manner that stubs are uprooted and loosened from soil around their roots. Roots, plant stubs, shredding debris and trash remaining from harvesting or clean-up operations shall be mixed with surface soil.

"(f) Hardship Variances.

"(1) Upon written application for a hardship variance the Agricultural Commissioner, after consultation with the Department, may grant a variance from full compliance with requirements of subsections (d) and (e) for particular fields when the person responsible for the property demonstrates to the Commissioner in said written application that compliance has been accomplished to the fullest extent practicable. In each such case, the Commissioner shall document in writing the extent of compliance and the reasons why full compliance is impracticable for the particular field. The Commissioner may issue a written variance permit on such conditions as the Commissioner deems proper to maintain the purpose of the host-free district program. Such variance does not excuse compliance with Section 5552 of the Food and Agricultural Code.

"(2) The Director may grant a hardship variance to growers on an areawide basis in case of extreme hardships resulting from adverse natural causes."

[3]Penalty "assessments" on fines, penalties and forfeitures are levied automatically pursuant to Penal Code section 1464 and Government Code section 76000 et seq. (formerly Pen. Code, § 1206.8). "Where multiple offenses are involved, the assessment shall be based upon the total fine . . . for each case." (Pen. Code, § 1464, subd. (b).) In the present case, the total assessments to be imposed if respondents are found to have violated the plowdown law apparently would be 70 percent of the total fines imposed. Thus, on a $500 fine, the penalty assessment would be $350 for a total penalty of $850.

We first hold that because the potential penalties to be imposed against each defendant for multiacre violations of Food and Agricultural Code section 5784 necessarily arise out of a single act or omission, i.e., the defendant's decision not to plow down his acreage by a specified date, Penal Code section 654 precludes punishment for more than one violation of the statute. This means the maximum potential penalty which can be imposed on a defendant for violating Food and Agricultural Code section 5784 is $500 plus the penalty assessment of $350 for a total of $850.

We next hold that the potential penalty of $850 does not require a jury trial under either the federal or state Constitutions.

Finally, by way of dictum, we advise that if the Legislature should decide to rewrite Food and Agricultural Code section 5784 to provide multiacre penalties for a single violation, as the statute read before its 1984 amendment, and if the penalties to be imposed for a single violation, including the penalty assessment, total $1,000 or more, a defendant would be entitled to a jury trial. Simply put, a legislative classification of a public offense as an infraction does not determine a citizen's constitutional right to a jury trial.

## I. *Background*

When division 4, part 1, chapter 8, article 5 (which deals with host-free periods and districts) of the Food and Agricultural Code was included in the reenacted Agricultural Code in 1967, it provided that violations of the article or regulations promulgated pursuant to it were misdemeanors. (Stats. 1967, ch. 15, § 2, subd. 9, p. 45.) Misdemeanors were, at that time, the lowest classification of criminal offenses in California; the category of offenses known as infractions was not added to the statutory scheme until 1969. (Stats. 1968, ch. 1192.)

In 1978, Food and Agricultural Code section 5784 was amended by the Legislature. (Stats. 1978, ch. 591, § 1, p. 2019.) In its revised form, section 5784 stated in part: "*Any violation* of this article or any regulation adopted pursuant thereto relating to the eradication or control of cotton pests is *an infraction* and shall be subject to a fine of one hundred dollars ($100) plus one dollar ($1) per acre of land not in compliance. . . ." (Italics added.) The stated purpose of the amendment was so that violations "resulting from circumstances beyond the control of a farmer, will not result in such farmer having a criminal record, . . ." (Stats. 1978, ch. 591, § 2, p. 2019.) However, by labeling an offense under the article as an infraction, the Legislature also moved the offense into a class of violations statutorily exempt from jury trial. (Pen. Code, § 19c,[4] § 1042.5.) This, of course, would expedite the disposition of complaints by avoiding the delay inherent in jury trials.

---

[4]Penal Code section 19c provides: "An infraction is not punishable by imprisonment. A person charged with an infraction shall not be entitled to a trial by jury. A person charged

The 1984 Legislature amended section 5784 again. (Stats. 1984, ch. 995.) While the Legislative Counsel's Digest mentions only an increase in the amount of the penalty as the reason for the change ($500 plus $5 per acre), the section as amended materially alters the way the law is to be applied. Where the 1978 revision provided that a plowdown violation constituted a single offense, punishable by a fine determined by the number of acres involved, under the 1984 revision every acre not in compliance constitutes a separately chargeable infraction, each subject to an individual fine, in addition to an infraction for the general failure to plow down. (See fn. 1, *ante*.) Thus, a one-acre violation would be subject to a $505 fine plus a penalty assessment of $353.50 for a total penalty of $858.50.

Although the legislative history fails to disclose the reason for this amendment to section 5784, it would appear that the modification was intended to preclude application of the federal constitutional right to jury trial as will be explained *infra*.

## II. *Penal Code section 654.*[5]

The question is whether the failure to plow down a number of acres constitutes a single "act or omission" for Penal Code section 654 analysis. Appellant contends that under the clear language of Food and Agricultural Code section 5784 a farmer may be convicted of independent violations of the statute even though the violations share common acts or are part of an otherwise indivisible course of conduct. (See *In re Adams* (1975) 14 Cal.3d 629 [122 Cal.Rptr. 73, 536 P.2d 473].) Thus, according to appellant, fines for the separate acts of refusing to plow down separate acres of land, although stemming from the same decision, do not constitute double punishment for a single offense. Yet appellant then concedes "[s]ection 654 provides the mechanism for a court to tailor the penalty paid to the seriousness of the offense and the ability of the defendant to pay that penalty."

Although Penal Code section 654 by its express terms applies only to Penal Code violations, and only when an act or omission "is made punishable in different ways by *different provisions*" of the code, neither of these restrictions is taken literally by the courts. Section 654 applies to penal

---

with an infraction shall not be entitled to have the public defender or other counsel appointed at public expense to represent him unless he is arrested and not released on his written promise to appear, his own recognizance, or a deposit of bail."

[5]Penal Code section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either bars a prosecution for the same act or omission under any other."

provisions outside of the Penal Code. (*In re Adams, supra,* 14 Cal.3d at p. 633.) It also precludes punishment "when an act gives rise to more than one violation of the same . . . section . . . ." (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 18, fn. 1 [9 Cal.Rptr. 607, 357 P.2d 839].)

Does section 654 apply to infractions? Nothing in the language of the statute would indicate otherwise. In *In re Dennis B.* (1976) 18 Cal.3d 687, 692-695 [135 Cal.Rptr. 82, 557 P.2d 514], the Supreme Court assumed that section 654 applies to infractions when it ruled that a minor who pled guilty and was fined $10 for making an unsafe lane change in violation of Vehicle Code section 21658, subdivision (a), an infraction, could nevertheless be subjected to a subsequent Welfare and Institutions Code section 602 petition filed in the juvenile court alleging vehicular manslaughter arising out of the same act. The Supreme Court ruled there was no multiple prosecution bar under section 654 because the district attorney had no reason to know of the multiplicity of violations. (See also *People* v. *Sims* (1982) 32 Cal.3d 468, 494 [186 Cal.Rptr. 77, 651 P.2d 321] (dis. opn. of Kaus, J.) and *People* v. *Smith* (1977) 70 Cal.App.3d 306, 317 [138 Cal.Rptr. 783], characterizing the limited holding in *Dennis B.*)

■ Although it may be argued that the Legislature did not intend section 654 to bar separate fines for each acre in violation of the plowdown law because the Legislature specifically states in Food and Agricultural Code section 5784, subdivision (c) that each acre not plowed down is to be "a separate additional violation," the argument overlooks the constitutional underpinnings of section 654. According to *Neal* v. *State of California, supra,* the section 654 bar on punishment for two offenses arising from the same act is founded upon "the constitutional and common-law rule against multiple punishment for necessarily included offenses . . . ." (*Neal* v. *State of California, supra,* 55 Cal.2d at p. 18, citing *People* v. *Kehoe* (1949) 33 Cal.2d 711, 713 [204 P.2d 321].) In *People* v. *Kehoe, supra,* the court framed the doctrine of included offenses (grand theft of auto and driving auto without owner's consent) as "part of the constitutional guarantee against double jeopardy. (Cal. Const., art. I, § 13.)" (*Kehoe, supra,* 33 Cal.2d at p. 713; see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 768, 785, pp. 735-736, 756-757.) Although these statements in *Neal* and *Kehoe* may be dicta, they are pursuasive in the light of the Supreme Court's reasoning. (See 9 Witkin, Cal. Procedure, *op. cit. supra,* Appeal, § 785, pp. 756-757.)

The "notice to appear" of the Kern County Agricultural Commissioner as well as the complaints filed against the respondents in the justice courts all charge each respondent with a single offense of violating Food and Agricultural Code section 5784. There is no separate charge for each acre not in compliance.

This method of charging a farmer with a violation of the statute comports with the respondents' contention of how a cotton farmer reaches a decision concerning the preparation, planting and cultivation of his crop: "... a farmer disks, plants, cultivates and harvests the cotton on his real property as one unit. [The] overall plan and objective is [not] to grow cotton ... by individual acre." In other words, when a farmer sits down at the breakfast table to decide whether to plow down the cotton stalks as required by the statute, he or she does not evaluate the question with respect to individual acres. The farmer makes the decision as to the acres not to be plowed down with usually only one objective—to save time and money.[6]

*Neal* v. *State of California, supra,* 55 Cal.2d 11, explains that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense. (*Id.* at p. 18.) As we read section 5784, any defendant who fails to plow down one or more acres for which he will be fined $500 will necessarily commit the lesser separate offenses for each acre not plowed down and for which he will be fined an additional $5 per acre.

The proscription of section 654 against multiple punishment of a single act is not limited to necessarily included offenses. (*Neal* v. *State of California, supra,* 55 Cal.2d at p. 18.) " 'If only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed, notwithstanding that the offenses are not necessarily included offenses. It is the singleness of the act and not of the offense that is determinative.' " (*Id.* at p. 19.)

Finally, "[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to *one objective,* the defendant may be punished for any one of such offenses but not for more than one." (*Ibid.,* italics added.)

For the reasons stated and regardless of the language of section

---

[6]We recognize that if a farmer owned separate parcels of cotton land in separate host-free districts as described in California Administrative Code title 3, section 3595, subdivisions (c) and (d) (see fn. 2, *ante*), so that the plowdown dates would be different, it could be persuasively argued that the farmer's acts of refusing to plow down his acreage in each district should be punished as separate offenses, provided the prosecution charged separately the offense in each district. This scenario, however, would nevertheless implicate the right to a jury trial if the aggregated total of the fines reached $1,000 (see pt. III, *post*; also see *State* v. *Nettleton* (La. 1979) 367 So.2d 755, 761—"where two or more charges are joined for trial, the right to a jury must be determined by the aggregate punishment which may be imposed in that case"; see also *Bruce* v. *State* (1980) 126 Ariz. 271 [614 P.2d 813, 814]; *Vallejos* v. *Barnhart* (1985) 102 N.M. 438 [697 P.2d 121, 123-124].)

5784, a defendant upon conviction of multiple offenses based on one or more acres in violation of the statute cannot be fined more than $500 plus the applicable penalty assessment.

III. *Food and Agricultural Code section 5784 as construed does not implicate the federal or state constitutional right to a jury trial.*

The California statutory bar on jury trials for infractions (Pen. Code, § 19c), while perhaps a useful guideline in many cases, is only a guideline at best. "In determining the applicability of ... constitutional rights, the [United States] Supreme Court has emphasized that the nature of the proceeding and its consequences determine the applicability of the protections of the Bill of Rights, not 'labels of convenience.' " (*Serna* v. *Superior Court* (1985) 40 Cal.3d 239, 256 [219 Cal.Rptr. 420, 707 P.2d 793], cert. den. *California* v. *Serna* (1986) 475 U.S. 1096 [89 L.Ed.2d 894, 106 S.Ct. 1493]; see also *McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 541 [29 L.Ed.2d 647, 658-659, 91 S.Ct. 1976].) ▪ The high court has ruled that the federal constitutional right to jury trial, which applies to state criminal prosecutions (*Duncan* v. *Louisiana* (1968) 391 U.S. 145, 149 [20 L.Ed.2d 491, 496, 88 S.Ct. 1444]), applies only to "serious" offenses; "petty" offenses are tried by the court. (*Callan* v. *Wilson* (1888) 127 U.S. 540 [32 L.Ed. 223, 8 S.Ct. 1301]; *Dist. of Columbia* v. *Clawans* (1937) 300 U.S. 617, 624 [81 L.Ed. 843, 845-846, 57 S.Ct. 660].)

The question of what constitutes a serious offense under federal constitutional standards has been examined by numerous courts. Obviously, opinions of the United States Supreme Court demand first consideration, and these holdings conclude that an offense is categorized as serious or petty by "the nature of the offense, and the amount of punishment prescribed, rather than its place in the statutes, ..." (*Schick* v. *United States* (1904) 195 U.S. 65, 68 [49 L.Ed. 99, 101, 24 S.Ct. 826, 827].) Opinions following *Schick* have refined the classification system, at least for offenses punishable by incarceration: "Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses, ..." (*Duncan* v. *Louisiana, supra,* 391 U.S. at p. 159 [20 L.Ed.2d at p. 502].) This dividing line for offenses which may result in jail or prison sentences found its roots in 18 United States Code section 1(3), which, prior to a 1984 amendment, stated: "Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense." Although this statute was given "no talismanic significance" by the Supreme Court (*Muniz* v. *Hoffman* (1975) 422 U.S. 454, 477 [45 L.Ed.2d 319, 335, 95 S.Ct. 2178]), the six-month dividing line of section 1(3) has become standardized. (*Baldwin* v. *New York* (1970) 399 U.S. 66 [26 L.Ed.2d 437, 90 S.Ct. 1886].)

Unfortunately, where an offense is punishable by *fine only*, the Supreme Court has refused to establish guidelines, or to adopt section 1(3) as a standard. For example, in *Muniz* v. *Hoffman, supra,* 422 U.S. 454 , a union was fined $10,000 for contempt. The Supreme Court acknowledged its reliance on section 1(3) in instances where incarceration is possible, but observed: "[W]e cannot accept the proposition that a contempt must be considered a serious crime under all circumstances where the punishment is a fine of more than $500, unaccompanied by imprisonment. It is one thing to hold that deprivation of an individual's liberty beyond a six-month term should not be imposed without the protections of a jury trial, but it is quite another to suggest that, regardless of the circumstances, a jury is required where any fine greater than $500 is contemplated. . . . It is not difficult to grasp the proposition that six months in jail is a serious matter for any individual, but it is not tenable to argue that the possibility of a $501 fine would be considered a serious risk to a large corporation or labor union. Indeed, . . . we cannot say that the fine of $10,000 imposed on Local 70 in this case was a deprivation of such magnitude that a jury should have been interposed to guard against bias or mistake. This union, the [Government] suggests, collects dues from some 13,000 persons; and although the fine is not insubstantial, it is not of such magnitude that the union was deprived of whatever right to jury trial it might have under the Sixth Amendment." (*Muniz* v. *Hoffman, supra,* 422 U.S. at p. 477 [45 L.Ed.2d at pp. 335-336].)

The qualified language in *Muniz* has been read by federal appellate courts as requiring them to look to whether the defendant is an individual or an organization or corporation in evaluating fine-only cases as petty or serious. (*United States* v. *Troxler Hosiery Co., Inc.* (4th Cir. 1982) 681 F.2d 934, 936, fn. 2; *U.S.* v. *Professional Air Traffic Controllers* (1st Cir. 1982) 678 F.2d 1, 4-5; *United States* v. *McAlister* (10th Cir. 1980) 630 F.2d 772, 774; *Girard* v. *Goins* (8th Cir. 1978) 575 F.2d 160, 164-165; *United States* v. *Hamdan* (9th Cir. 1977) 552 F.2d 276, 280 [40 A.L.R.Fed. 866]; *Douglass* v. *First Nat. Rlty. Corp.* (D.C.Cir. 1976) 543 F.2d 894, 901-902.) Of these cases, all but *Troxler Hosiery* involved individual defendants, and all but *Troxler Hosiery* were reversed or modified due to excessive fines. The 10th and District of Columbia Circuits expressly relied on the $500 margin in section 1(3) as the basis for their decisions. (*McAlister, supra,* 630 F.2d at p. 774; *Douglass, supra,* 543 F.2d at p. 902.) Although the Eighth Circuit refused to adopt $500 as an absolute boundary, it found that a fine of $2,500 assessed against an individual implicated the right to a jury trial. (*Girard, supra,* 575 F.2d at p. 165.) The Ninth Circuit adopted section 1(3) as a workable standard as of the date of the 1977 *Hamdan* decision, but presumed that Congress would adjust the $500 figure to "continue to represent a fair judgment as to the appropriate line between petty and serious offenses." (*Hamdan, supra,* 552 F.2d at p. 280, fn. 3.)

Congress has indeed adjusted the figure. In 1984, 18 United States Code section 1(3) was amended to read: "Any misdemeanor, the penalty for which, as set forth in the provision defining the offense, does not exceed imprisonment for a period of six months or a fine of not more than $5,000 for an individual and $10,000 for a person other than an individual, or both, is a petty offense." No opinion yet published deals with the new dollar figures. However, in view of the Supreme Court's statements in *Muniz* v. *Hoffman, supra,* 422 U.S. 454 that section 1(3) possesses "no talismanic significance," any actual effect of this statutory change on a constitutional right must be minimized. "Congress may not, of course, redefine the boundaries of constitutional protections. Our holdings in *Potvin* and *Floyd* [*United States* v. *Potvin* (10th Cir. 1973) 481 F.2d 380 (26 A.L.R.Fed. 732); *United States* v. *Floyd* (10th Cir. 1973) 477 F.2d 217 ] suggest only that the § 1(3) definition of petty offense lies within the constitutional definition, not that the two are identical." (*United States* v. *McAlister, supra,* 630 F.2d at p. 773.)

Where does all of this lead? This court has no clear guideline to follow in these cases. Although the Legislature has classified a plowdown violation as an infraction, a good argument can be made that such an offense is, by its very nature, indeed serious. The plowdown is necessary to control the pink bollworm; if a pink bollworm infestation should become rampant in the cotton producing areas of the San Joaquin Valley, disastrous economic and human consequences would result. Moreover, any cotton farmer who would purposely violate the plowdown statute and regulations should deservedly receive some degree of opprobrium from his or her neighbors and community. Nevertheless, whether a public offense is petty or serious by nature is basically a policy question; for this reason we shall defer to the legislative determination that a plowdown violation is per se a petty offense. Respondents concede this point.

If the nature of the offense is not serious, we must then look to the potential penalty to determine whether the offense is serious. (*Schick* v. *United States, supra,* 195 U.S. 65; *People* v. *Oppenheimer* (1974) 42 Cal.App.3d Supp. 4, 11 [116 Cal.Rptr. 795].) Although several federal circuits have fixed $500 as the absolute limit above which a defendant would be entitled to a jury trial under the federal Constitution, we believe in light of the dollar's declining value over the past 10 years (since the Ninth Circuit's *Hamdan* decision, *supra*) that the United States Supreme Court would not today fix $500 as the standard for an individual citizen's right to a jury trial. Rather, we believe that a potential fine and penalty assessment of less than $1,000 against an individual defendant would pass constitutional muster for jury trial purposes. What the limit would be for corporate or other organizational defendants we are not prepared to say. Because of the applicability of Penal Code section 654, none of the infractions here involved will result in a fine

greater than $500 plus a penalty assessment of $350 for a total "punishment" of $850; hence, Food and Agricultural Code section 5784 does not deprive respondents of the right to a jury trial under the federal Constitution.

Turning to the California Constitution, we note that it provides that "[t]rial by jury is an inviolate right and shall be secured to all, . . ." (Art. I, § 16.) Literally, there is no exception to the jury trial right; however, the California Supreme Court has ruled that this provision extends a right to jury trial only in those cases where the right existed at common law when the Constitution was adopted in 1850. (*People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286-287 [231 P.2d 832]; *Ex parte Wong You Ting* (1895) 106 Cal. 296, 299 [39 P. 627].) Nevertheless, the fact that the particular statute or offense was not in existence when the Constitution was adopted is not determinative; if the same type or class of crimes called for a jury trial, the right is carried over to the new statute. (*People* v. *One 1941 Chevrolet Coupe, supra,* 37 Cal.2d at p. 300.)

"Examination of the historical fact" discloses that a "bewildering variety of offenses were subject to summary trial without a jury at the common law." (*People* v. *Oppenheimer, supra,* 42 Cal.App.3d Supp. at p. 9.) *Oppenheimer* quotes from an article by Felix Frankfurter and Thomas G. Corcoran in 39 Harv. L. Rev. (1926) 917, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury*: "Eliminating all penal enforcements in which the informer or the 'party aggrieved' shared the fine with the Crown, we find at least one hundred offenses for which the Crown prosecuted before a justice and without a jury. Violations of the laws relating to liquor, trade and manufacture, labor, smuggling, traffic on the highway, the Sabbath, 'cheats,' gambling, swearing, small thefts, assaults, offenses to property, servants and seamen, vagabondage, and disorderly conduct were largely in the justices' hands." (39 Harv.L.Rev. at p. 928, fns. omitted.)

Thus, "under the English common law and indeed under colonial law antedating the independence of the United States, many petty criminal offenses against statutes or municipal ordinances were not triable by jury at the time the Constitution was adopted. 'As to them, the right of trial by jury has never existed; and, since they were triable without a jury when the [state] Constitution was adopted, they are now triable without a jury. . . .' (*Ibid.*) *Ex parte Wong You Ting, supra,* 106 Cal. 296 at page 300; *In re Fife* (1895) 110 Cal. 8, 9 . . . ." (*People* v. *Oppenheimer, supra,* 42 Cal.App.3d Supp. at p. 8.)

Because the plowdown violations are not the type of public offense that

called for a jury trial at common law in 1850, the statute as drafted does not violate the California constitutional right to a jury trial.[7]

IV. *Possible legislative amendment.*

The Legislature, of course, is free to amend Food and Agricultural Code section 5784 to return it to its pre-1984 form calling for a single violation regardless of the acreage involved and graduated penalties based on the number of acres in violation. This makes sense because the greater the number of acres in violation, the greater the threat of bollworm infestation and potential harm to the cotton industry and the public.

■ However, we express a caveat: mere classification of a public offense as an infraction does not determine the constitutional right to a jury trial. The present case is a good example where the potential penalties including assessments against the individual respondents range from $1,147.50 to $23,375. In our view, which accords with that of the appellate department of the superior court, even the lesser penalty of $1,147.50 would implicate the federal constitutional right to a jury trial. In today's world, a penalty (including assessments) of $1,000 would have serious consequences to any individual citizen and should not be treated as a petty offense. (See pt. III, *ante.*) We express no opinion, however, as to the dollar amount which would trigger the federal constitutional right to a jury trial for a corporate or organizational defendant. (Cf. *Muniz* v. *Hoffman, supra,* 422 U.S. 454, 477 [45 L.Ed.2d 319, 335].)

The actions are remanded to the justice courts with direction to allow each case to proceed to trial as infractions according to the views expressed in this opinion and without affording the defendants the right to a jury trial.

Hamlin, J., and Papadakis (V. N.), J.,* concurred.

---

[7]We have perused the California legislative scheme for infractions and observe that except for weight violations of vehicles on the public highways (Veh. Code, §§ 35550-35554; 42030), the highest fine imposed for committing an infraction appears to be $1,000. (Pen. Code, § 374b—dumping waste matter upon public or private property; § 374b.5—littering public or private property.) Other infractions are punishable by a fine "not to exceed $500" or a lesser amount. (See, e.g., Bus. & Prof. Code, § 4382, subd. (b); Veh. Code, § 22348, subd. (b).) As we explain in part IV below, a public offense calling for a $1,000 penalty should be deemed serious in nature if charged against an individual defendant even if called an infraction.

*Assigned by the Chairperson of the Judicial Council.