[No. F015137. Fifth Dist. May 17, 1991.]

COUNTY OF MADERA, Plaintiff and Respondent, v.
RANGER INSURANCE COMPANY et al., Defendants and Appellants.

## COUNSEL

Nunez & Bernstein and E. Alan Nunez for Defendants and Appellants.

Jeffrey L. Kuhn, County Counsel, and William Fjellbo, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

DIBIASO, Acting P. J.—May the court reinstate a defendant on a previously forfeited bail bond without prior notice to the surety? ■■ ■ We answer this question in the negative, and consequently reverse a summary judgment[1] against appellant Ranger Insurance Company (Ranger).

On July 8, 1989, Ranger, through its agent David Weathers Bail Bonds, posted a bail bond in the amount of $6,000 for Jose Luis Villalobos, the defendant in a Madera County Justice Court criminal action. Villalobos was ordered to appear July 21 for a preliminary hearing on the charges. When Villalobos failed to appear on that date, a bench warrant issued and the bond was forfeited. Notice of the forfeiture was mailed to Ranger on July 24. On July 28, Villalobos appeared in court. The forfeiture was set aside and the Ranger bond reinstated. No prior notice of Villalobos's appearance was given to Ranger, although written notice of reinstatement was subsequently mailed on July 31.

On August 25, Villalobos again failed to appear for the preliminary hearing and the bond was once more declared forfeit. Notice of forfeiture was mailed to Ranger on August 28. Villalobos did not reappear.

On February 28, 1990, summary judgment in the amount of $6,000 was entered against Ranger and in favor of the County of Madera (Madera). The judgment was satisfied by Ranger on April 2. Ranger's subsequent motion to set aside the summary judgment and exonerate the bond was denied.

---

[1]A summary judgment against a surety is a consent judgment, pursuant to a clause in the bond, which is normally not appealable. (*People v. Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216, 219 [119 Cal.Rptr. 917].) Appellate courts have created exceptions where the judgment was not entered in compliance with the jurisdictional prescriptions contained in Penal Code sections 1305 and 1306 (*ibid.*), and where the appeal is actually from an order denying a motion to vacate a forfeiture (*People v. Souza* (1984) 156 Cal.App.3d 834, 837, fn. 2 [203 Cal.Rptr. 80]). The instant appeal is proper under both exceptions.

On Ranger's appeal, the Appellate Department of the Madera County Superior Court reversed the summary judgment and directed the lower court to exonerate the bond and to order Madera to reimburse Ranger. The appellate department granted Madera's ensuing application for certification, and we ordered the action transferred for hearing and decision pursuant to California Rules of Court, rule 62(a).[2]

## DISCUSSION

At the time the instant proceedings arose, Penal Code[3] section 1305, subdivision (a) read in part:

"If, without sufficient excuse, the defendant neglects to appear . . . upon any . . . occasion when his or her presence in court is lawfully required, . . . the court must direct the fact to be entered upon its minutes, and; . . . the undertaking of bail, or the money deposited instead of bail, as the case may be, must thereupon be declared forfeited, and . . . the clerk of the court shall, promptly upon entering the fact of such failure to appear in the minutes, mail notice of the forfeiture to the surety on the bond . . . and shall execute a certificate of such mailing and place it in the court's file in the case . . . . If the clerk fails to mail such notice within 30 days after such entry, the surety . . . shall be released from all obligations under the bond.

"But if at any time . . . within 180 days after mailing such notice of forfeiture, the defendant appears, and satisfactorily excuse[s] the defendant's neglect or show[s] to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail, the court shall, under terms as may be just and that are equal with respect to all forms of pretrial release, direct the forfeiture of the undertaking . . . to be set aside and the bail . . . exonerated immediately. *The court may order the bail reinstated and the defendant released again on the same bond after notice to the bail, provided that the bail has not surrendered the defendant.* If at any time within 180 days after such entry in the minutes or mailing as the case may be, the bail should surrender the defendant to the court or to custody, the court shall under terms as may be just direct the forfeiture of the undertaking . . . to be set aside and the bail . . . exonerated immediately." (Italics added.)[4]

■ Notwithstanding the presence in the statute of the phrase "after notice to the bail," Madera contends a trial court may reinstate bail and

---

[2]Under this procedure, we review directly the ruling of the justice court. (See, e.g., *People v. Anderson* (1987) 191 Cal.App.3d 207, 220 [236 Cal.Rptr. 329]; *Alta Bldg. Material Co. v. Cameron* (1962) 202 Cal.App.2d 299, 305 [20 Cal.Rptr. 713].)

[3]All statutory references are to the Penal Code.

[4]Nonsubstantive changes have since been made to this portion of the statute.

release a defendant on the same bond without prior notification to the surety. To hold otherwise, says Madera, would give the surety the unrestricted power, by granting or withholding consent, to determine whether the defendant will be reinstated on bail.

In our estimation, the meaning of the italicized portion of the second paragraph of the section is evident: When the defendant appears and presents a satisfactory excuse for his or her nonappearance, the trial court has the discretion to vacate the forfeiture and release the defendant on the same bond only if the surety has been given prior notice of the possibility of reinstatement, separate and distinct from the notice of forfeiture required by the first paragraph of subdivision (a) of section 1305.[5] "It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed. [Citation.]" (*Great Lakes Properties, Inc. v. City of El Segundo* (1977) 19 Cal.3d 152, 155-156 [137 Cal.Rptr. 154, 561 P.2d 244].)

The legislative history of section 1305 confirms this conclusion. As it existed in 1982, section 1305, subdivision (a), required a surety to routinely appear at the reinstatement hearing before an order setting aside a forfeiture could be entered. It provided in pertinent part:

"But if at any time . . . within 180 days after mailing such notice of forfeiture, the defendant *and his bail appear*, and satisfactorily excuse the defendant's neglect . . . , the court shall direct the forfeiture of the undertaking . . . to be discharged upon such terms as may be just, *and may order the bail reinstated and the defendant released again on the same bond.*" (Italics added.)

Under the 1982 version of the statute, then, the surety obtained prior notice of the possibility the defendant would be released on the same bond. Since the defendant was present in court and immediately accessible to the surety, the surety could, if it wished, take steps to satisfy itself there would be no future failures to appear if its bond were reinstated. In addition, if the surety concluded it was not secure, it could, immediately after entry of the reinstatement order, surrender the defendant to custody under section 1300.[6]

---

[5] The statute requires notice to "the bail." As used in the statutory scheme, "bail" refers to the cash, the undertaking, and the bond agent. (*People v. Amwest Surety Insurance Co.* (1980) 105 Cal.App.3d 51, 54 [164 Cal.Rptr. 159].) The parties implicitly concede it also refers to the surety.

[6] Section 1300 provided, and currently provides, in relevant part: "(a) At any time before the forfeiture of their undertaking, . . . the bail . . . may surrender the defendant in their exoneration . . . to the officer to whose custody he was committed at the time of giving bail . . . ."

Subdivision (a) of section 1305 remained unchanged between 1982 and 1985. In 1985 the second paragraph was comprehensively rewritten. (Stats. 1985, ch. 1486, § 1, pp. 5481-5482.) As amended July 11, 1985, Senate Bill No. 673 (1985-1986 Reg. Sess.) originally called for the bail's consent to reinstatement. This provision was opposed on the ground it interfered with the court's discretion and ability to impose additional conditions on reinstatement. (Assem. Com. on Finance and Ins. Rep. (Aug. 20, 1985 Hg.), pp. 1-2.) It was subsequently proposed that the bill be amended to make clear the court could order the bail reinstated and the defendant released so long as the surety had not surrendered the defendant. (Sen. Ins., Claims and Corporations Com., Conf. Rep. Analysis (Aug. 1985).) Senate Bill No. 673 was then amended on August 28, 1985, to provide, among other things, for notice to the bail. (Assem. 3d reading analysis of Sen. Bill No. 673 (1985-1986 Reg. Sess.) as amended Aug. 28, 1985.) This proviso remained intact through the September 10, 1985, amendment (Rep. of Legis. Counsel to Governor (Sept. 26, 1985), Conf. Com. No. 1, p. 2), which was the last alteration of the bill. Senate Bill No. 673 was signed by the Governor on October 2, 1985.

According to the Advisory Committee on Bond and Surety Matters, Senate Bill No. 673 was a response to an increasing number of insolvencies among surety companies that wrote bail bonds. In part, the purpose of the bill was to eliminate the need for the surety's appearance in court as a precondition to an order discharging a bail forfeiture, such a process being seen by the bill's proponents as expensive, time consuming, and unnecessary. (See *County of Los Angeles* v. *American Bankers Ins. Co.* (1988) 202 Cal.App.3d 1291, 1294 [249 Cal.Rptr. 540].)

By eliminating the need for appearance by the surety, the 1985 amendments also eliminated the former statute's built-in notice mechanism to the surety. Yet, the change was expressly designed to benefit the surety. It would be irrational to conclude the Legislature intended, on the one hand, to streamline the process so as to ease the surety's burden, and, on the other, to enhance its financial risk by abolishing its means of notice. Were we to adopt such reasoning, we would necessarily determine that the phrase "after notice to the bail" is without effect. Such a result would ignore the history and purpose of the 1985 amendments, as well as accepted rules of statutory construction. ■ (See *DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722] [statute must be given reasonable, commonsense construction in accord with its apparent purpose, so as to advance wise policy rather than absurdity; significance, if possible, should

be assigned to every part in pursuit of underlying legislative intent and in context of entire statutory framework].)[7]

Additionally, the surety has a due process right to notice before reinstatement and rerelease. A proceeding to discharge a forfeiture and reinstate bail is "an adversary proceeding where . . . notice must be given to protect the adverse party's right to be heard on the issue as a matter of due process of law." (*People* v. *Wilshire Ins. Co, supra*, 46 Cal.App.3d at p. 222.) Although referring to notice to the district attorney, these words from *Wilshire* apply equally to a surety in Ranger's position. An accused on bail "technically is considered as having been delivered into the custody of his sureties who are legally liable for his appearance in court at required times in accordance with the terms of their undertaking." (*People* v. *United Bonding Ins. Co.* (1969) 274 Cal.App.2d 898, 904 [79 Cal.Rptr. 579].) Because of this exposure, the surety must be considered an adversary party and thus afforded notice and the opportunity to be heard *before* a reinstatement and rerelease order is made.

Prior notice to a surety will not give it a veto over the court's discretionary decision whether to reinstate bail and release a defendant on the same bond. First, the legislative history does not support this result. The 1985 preenactment amendment of Senate Bill No. 673 to add the phrase "after notice to the bail," and the deletion of the provision which required the surety's consent to reinstatement, unambiguously signified that the Legislature did not intend to give sureties the practical power to determine if the defendant would be reinstated on bail or rereleased on the same bond. Second, requiring prior notice to the surety is not the equivalent of requiring the consent of the surety. Notice is mandated so that the surety may, if it desires, contact the defendant and take steps to determine why he or she initially failed to appear, and to assure itself such failure will not recur. This is especially important if the surety has been unable to locate the defendant. By virtue of the notice, the surety is told where and when, i.e., at the court hearing on the reinstatement, it can find the defendant.

Notice also assures the surety of an opportunity to be heard on the issue of reinstatement and rerelease. It is not speculative to assume that in some cases a surety will have obtained relevant information about the defendant's intent regarding future court appearances. For instance, a bail agent may discover that the defendant quit his or her job and told the employer he or she was moving to another state. Presumably the court would be interested in

[7]Since in the instant case no prior notice of the reinstatement was given either to the surety or to its bail agent, we do not decide any issue concerning the appropriate form or timing of such notice, or whether notice to the bail agent alone is sufficient to comply with section 1305.

this information before it determined whether to rerelease the defendant on the same bond. While perhaps an extreme illustration, we can conceive of a myriad of other pertinent facts relevant to the decision about reinstatement and rerelease which the surety might be able to present to the court. Although not involving the same notice requirement, the observations in *People* v. *Wilshire Ins. Co.*, *supra*, 46 Cal.App.3d at pages 220-221, footnote 1, are apt here:

"We may speculate, for example, upon the right of Wilshire to reevaluate its position in light of the defendant's failure to appear. Wilshire might have decided to be relieved of the risk and surrender the defendant in the criminal case to custody, which it had a right to do. (Pen. Code, § 1300.) The surety would have been alerted to [the defendant's] tendency not to appear and might have taken steps to assure his appearance at the trial, his failure to appear thereat being the ultimate cause of the forfeiture herein. The real point is that by the failure to receive notice the surety was deprived of the opportunity to consider all factors potentially producing an increased risk, which opportunity the statute apparently intended to assure."

If, however; the court determines the failure to appear should be excused and the defendant released on the same bond, it retains absolute discretion to so order, regardless of the wishes of the surety. If the surety is insecure by the reinstatement, it has the right, pursuant to section 1300, to surrender the defendant to custody. This prerogative does not afford it control over the court's exercise of discretion; it merely gives the surety the option to discontinue its responsibility to guarantee the defendant's appearance in court.[8]

Furthermore, requiring prior notice will not discourage the voluntary appearance of fugitive defendants. If the defendant's failure to appear was willful, it is doubtful he or she will consensually surrender or reappear in any event. If the failure to appear was excusable, there still exists a powerful incentive to surrender—avoidance of additional fines or further charges. (See, e.g., §§ 1214.1, 1320.5.) We may reasonably assume the district attorney will not attempt to prosecute a defendant for willful failure to appear when the nonappearance has already been found pardonable by the court. Thus, surrender will be a viable option for many defendants.

---

[8]We cannot assume the surety will automatically surrender the defendant, thereby acquiring as a practical matter the veto power it has not expressly been given by statute. Section 1300, subdivision (b) gives the court discretion to order the surety to return some or all of the premium paid for the bond "if the court determines that good cause does not exist for the surrender of a defendant who has not failed to appear or has not violated any order of the court." While the applicability of this subdivision is unclear where the failure to appear was deemed *excused,* we can conceive of a number of other steps—short of surrender—the surety may take to assure the defendant's appearance and the ultimate exoneration of the bond.

■ Failure to give the surety notice is a jurisdictional defect. (See *People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 904 [98 Cal.Rptr. 57, 489 P.2d 1385]; *People* v. *Wilshire Ins. Co.*, *supra*, 46 Cal.App.3d at p. 220.) As such, it may be raised for the first time on appeal. (E.g., *Twine* v. *Compton Supermarket* (1986) 179 Cal.App.3d 514, 518 [224 Cal.Rptr. 562].) "Where the court activities violate a strict statutory command designed for the surety's protection," prejudice need not be shown. (*People* v. *Resolute Ins. Co.* (1975) 50 Cal.App.3d 433, 437 [123 Cal.Rptr. 246]; *People* v. *Wilshire Ins. Co.*, *supra*, 46 Cal.App.3d at p. 220.)

Section 1305 does not direct a particular result when the required notice is not given to the surety. In *People* v. *Resolute Ins. Co*, *supra*, 50 Cal.App.3d at pages 435-436, the court determined that although section 1303 failed to specify a result, the purpose of the statute required a release of the surety's obligation because "[t]he notice is an essential of fairness to the bondsman." The same principle applies here. "The court's failure to follow a strict statutory direction designed for the surety's protection exonerated the surety. The court thereafter lacked jurisdiction either to forfeit the bail or to enter a summary judgment." (*Resolute Ins. Co.*, *supra*, 50 Cal.App.3d at p. 437; see also *People* v. *Wilshire Ins. Co.*, *supra*, 46 Cal.App.3d at pp. 220-221.)

### DISPOSITION

The summary judgment on the bond is reversed. The municipal court is directed to exonerate the bond and order Madera to make reimbursement to Ranger.

Thaxter, J., and Buckley, J., concurred.